*MHN*



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*RECEIVED*

SEP 0 2 2008
SEP 02 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*LCW*

BRIAN JONES

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

LT. EDWARDS, MAJOR
LAKE, C/O KAJTSA,
C/O TARR, C/O RODRIGUEZ,
TAMMY GARCIA, AMI WORKMAN,
CLEO JOHNSON, LT. D. JOHNSON,
SGT, McDOWELL, C/O REGINALD JACKSON, ED BUTKIEWICZ, TERRY McCANN

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**08CV4981
JUDGE LEFKOW
MAG. JUDGE VALDEZ**

C
G

CHECK ONE ONLY:

✓ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331** U.S. Code (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.    **Plaintiff(s):**

A.    Name:  BRIAN JONES

B.    List all aliases:

C.    Prisoner identification number:  K56957

D.    Place of present confinement:  STATEVILLE CORRECTIONAL CENTER

E.    Address:  P.O. BOX 112    JOLIET, IL 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank.  Space for two additional defendants is provided in B and C.)

A.    Defendant:  CORRECTIONAL OFFICER S. RODRIGUEZ

Title:  INTERNAL AFFAIRS INVESTIGATOR

Place of Employment:  STATEVILLE CORRECTIONAL CENTER.

B.    Defendant:  CORRECTIONAL OFFICER "TARR"

Title:  INTERNAL AFFAIRS INVESTIGATOR

Place of Employment:  STATEVILLE CORRECTIONAL CENTER

C.    Defendant:  CORRECTIONAL OFFICER KAJTSA

Title:  INTERNAL AFFAIRS OFFICER

Place of Employment:  STATEVILLE CORRECTIONAL CENTER

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

DEFENDANT LT. EDWARDS

D) TITLE - LIEUTENANT INTERNAL AFFAIRS INVESTIGATOR

PLACE OF EMPLOYMENT. STATEVILLE CORRECTIONAL CENTER

E) DEFENDANT - TERRY McCANN

TITLE - WARDEN

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

F) DEFENDANT- CLEO JOHNSON

TITLE - HEARING INVESTIGATOR / CHAIRPERSON ADJUSTMENT COMMITTEE

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

G) DEFENDANT - MAJOR LAKE

TITLE - "MAJOR" / REVIEWING OFFICER

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

H) DEFENDANT - TAMMY GARCIA

TITLE - GRIEVANCE OFFICER

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

I) DEFENDANT - AMI WORKMAN

TITLE - GRIEVANCE OFFICER

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

J) DEFENDANT - SGT McDOWELL

TITLE - "SERGEANT"

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

K) DEFENDANT REGINALD JACKSON

TITLE - CORRECTIONAL OFFICER

PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER

L) DEFENDANT - ED BUTKIEWICZ
   TITLE. COUNSELOR
PLACE OF EMPLOYMENT. STATEVILLE CORRECTIONAL CENTER

M) DEFENDANT - LT. D. JOHNSON
   TITLE - LIEUTENANT / CHAIR PERSON ADJUSTMENT
PLACE OF EMPLOYMENT - STATEVILLE CORRECTIONAL CENTER COMMITTEE

**III.**   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

    A.    Name of case and docket number: _____

          _____

    B.    Approximate date of filing lawsuit: _____

    C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

          _____

          _____

          _____

    D.    List all defendants: _____

          _____

          _____

          _____

    E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

    F.    Name of judge to whom case was assigned: _____

          _____

    G.    Basic claim made: _____

          _____

          _____

    H.    Disposition of this case (for example:  Was the case dismissed?  Was it appealed? Is it still pending?): _____

          _____

          _____

    I.    Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

**IV.    Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

I, BRIAN JONES WAS TRANSFERRED TO STATEVILLE C.C. FROM MENARD C.C. ON DEC 27TH 2006. WHILE IN MENARD CORRECTIONAL CENTER I WAS THREATENED, HARRASSED, AND INTIMIDATED BY MENARD INTERNALL AFFAIRS OFFICERS. CONSEQUENTLY ILLINOIS DEPARTMENT OF CORRECTIONS. (I.D.O.C.) SENT AN INVESTIGATOR TO TALK TO ME AND INVESTIGATE MY CLAIMS BECAUSE I FILED SEVERAL GRIEVANCES, WROTE DEPUTY DIRECTORS OF I.D.O.C. AND STATE SENATORS ABOUT MY TREATMENT AT MENARD. SUBSEQUENTLY I WAS TRANSFERRED TO STATEVILLE CORRECTIONAL CENTER, ON OR ABOUT APR 27TH 2007. I WAS INTERVIEWED BY THE INTERNAL AFFAIRS UNIT PRESENT WAS LT EDWARDS, & INVESTIGATORS S. RODRIGUEZ, A.J. KAJTSA, & TARR

4

PAGES
3 - 15

STATEMENT
OF
CLAIMS

Revised 9/2007

STATEMENT OF CLAIMS

③

1. I, BRIAN JONES, WAS TRANSFERRED TO STATEVILLE CORRECTIONAL CENTER FROM MENARD CORRECTIONAL CENTER ON DECEMBER 27, 2006

2. WHILE IN MENARD C.C. I WAS THREATENED, HARASSED, AND INTIMIDATED BY MENARD'S INTERNAL AFFAIRS OFFICERS.

3. CONSEQUENTLY, ILLINOIS DEPT OF CORRECTIONS (IDOC) SENT AN INVESTIGATOR TO SPEAK TO ME AND INVESTIGATE MY CLAIMS BECAUSE I FILED SEVERAL GRIEVANCES, WROTE DEPTUY DIRECTORS OF IDOC, AND WROTE STATE SENATORS ABOUT MY TREATMENT AT MENARD C.C.

4. SUBSEQUENTLY, I WAS TRANSFERRED TO STATEVILLE C.C.

5. ON OR ABOUT APR 27, 2007, I WAS INTERVIEWED BY STATEVILLE'S INTERNAL AFFAIRS UNIT.

6. PRESENT FOR THIS INTERVIEW WAS LT EDWARDS, AND INVESTIGATORS "TARR", "RODRIGUEZ", AND "KAJTSA".

7. I WAS QUESTIONED FIRST BY "LT EDWARDS" ABOUT MY NAME, I.D. # ETC. AND ALSO ABOUT A FIGHT THAT OCCURRED IN THE DINING ROOM THE DAY BEFORE.

8. I TOLD "LT. EDWARDS" THE TRUTH, WHICH WAS THAT I WAS NOT IN THE DINING ROOM AND KNEW NOTHING ABOUT THE FIGHT.

9. "RODRIGUEZ" TOLD ME I WAS A LIAR AND HE KNEW ALL ABOUT ME FROM MENARD AND THAT MENARD HAD A RIGHT TO HARASS ME AND MY FAMILY AND HE WOULD BE DOING THE SAME UNLESS I TOLD HIM EVERYTHING I KNEW.

10. "RODRIGUEZ" THEN SMILED AT ME AND SAID "I HAVE A REAL HARD ON FOR YOU". WHICH I INTERPRETED TO BE A HOMOSEXUAL COME ON AND A THREAT AT THE SAME TIME. -

11. KAJTSA THEN ASKED IF I WAS IN A GANG. I TOLD HIM NO. HE TOLD ME I WAS IN A GANG AND I HADN'T SEEN HARASSMENT UNTIL I SEEN STATEVILLE HARASSMENT AND THAT HE WAS GOING TO HAVE WARDEN MCCANN SEND ME TO THE SUPER MAXIMUM FACILITY HERE IN ILLINOIS (TAMMS C.O.) IF I DIDN'T COOPERATE.

12. I CONTINUED TO TELL THEM I DON'T KNOW ANYTHING ABOUT A FIGHT OR ANY GANG ACTIVITY. AS "TARR" WALKED IN AND ASKED IS THIS OUR FRIEND FROM MENARD? AND SAT THERE IDLY, APPROVING, CONDONING, AND PURPOSEFULLY IGNORING THE THREATS BY RODRIGUEZ AND KAJTSA ISSUED AGAINST ME. "TARR" SMILED THE WHOLE TIME.

13. I THEN WAS TOLD BY RODRIGUEZ AND KAJTSA THAT I BETTER GET IN LINE WITH THE STATEVILLE WAY OF OPERATING OR SUFFER THE CONSEQUENCES. THEN I WAS ESCORTED BY OTHER OFFICERS TO MY CELL.

14. DAYS LATER, ON "MAY 2. 2007" I WAS ESCORTED OUT OF MY CELL BY THE "ORANGE CRUSH" TACTICAL UNIT.

15. I WAS TAKEN TO A ROOM TO BE DRUG TESTED BY "RODRIGUEZ"; I GAVE HIM A URINE SAMPLE IN A DRUG TEST CUP CALLED "THE QUICK SCREEN FIVE" TESTING CUP. HE TOOK THE CUP TO ANOTHER ROOM WHERE KAJTSA AND TARR WERE CHECKING RESULTS. RODRIGUEZ TOLD ME I COULDN'T SEE THE RESULTS AND THEN ESCORTED ME TO THE DINING ROOM TO WAIT.

16. AN HOUR LATER, I WAS TOLD "ORANGE CRUSH" HAD FOUND SOME CONTRABAND IN MY CELL AND THEN I WAS ESCORTED TO THE SEGREGATION UNIT.

17. THE NEXT DAY "MAY 3 2007." I WAS GIVEN 2 DISCIPLINARY REPORTS, ALSO KNOWN AS "TICKETS". I RECEIVED ONE FOR THE "CONTRABAND", THE OTHER FOR TESTING POSITIVE FOR THC DURING A DRUG TEST THAT WAS ADMINISTERED ON "MAY 1ST 2007".

18. THE CONTRABAND TICKET WAS FOR A PAIR OF BROWN GLOVES AND GRAY SHORTS FOUND IN MY PROPERTY IN MY CELL. THAT I BOUGHT FROM COMMISSARY.

19. THE CONTRABAND TICKET WAS EXPUNGED WHEN I WENT IN FRONT OF THE ADJUSTMENT COMMITTEE BECAUSE THE ITEMS ARE SOLD ON THE PRISON COMMISSARY AT STATEVILLE AND MENARD. THIS WAS MAY 9TH 2007.

20. I ALSO WENT IN FRONT OF THE ADJUST MENT COMMITTEE MAY 9TH 2007 TO DEFEND MY SELF FOR THE DRUG TEST.

21. MY DEFENSE WAS I DON'T DO DRUGS "PERIOD," I NEVER TOOK A TEST ON MAY 1ST 2007. AND RODRIGUEZ AND KAJTSA HAD JUST THREATENED ME DAYS BEFORE AND NOW HAD FABRICATED A BOGUS DRUG TEST.

22. THE ADJUSTMENT COMMITTEE DID NOT RENDER A DECISION ON MAY 9 2007

23. ON MAY 14TH 2007, I WAS GIVEN ANOTHER TICKET SAYING I FAILED A DRUG TEST GIVEN BY RODRIGUEZ AND KAJTSA ON MAY 2, 2007.

24. THE TICKET WAS GIVEN TO ME ON MAY 14 2007. 12 DAYS AFTER THE ALLEGE OFFENSE HAD HAPPENED.

25. THIS WAS IN VIOLATION OF IDOC RULES AND ILLINOIS LAW. 20 ILL ADM. CODE, CH, I, SEC 504·30 "F" WHICH STATES "IN NO EVENT" SHALL A DISCIPLINARY REPORT OR INVESTIGATIVE REPORT BE SERVED UPON AN ADULT OFFENDER MORE THAN 8 DAYS AFTER THE COMMISSION OF AN OFFENSE OR THE DISCOVERY THEREOF UNLESS THE OFFENDER IS UNAVAILABLE OR UNABLE TO PARTICIPATE IN THE PROCEEDING.

26. ALSO I WAS NEVER ALLOWED TO PRESENT MY DEFENSE FOR THE TICKET I RECEIVED MAY 14TH 2007, WHICH PERTAINED TO THE MAY 2 2007 DRUG TEST. I WAS TOLD I COULDN'T PRESENT ANY DEFENSE OR HAVE ANY HEARING BECAUSE I WAS FOUND GUILTY ALREADY MAY 9TH 2007, EVEN THOUGH I NEVER TOOK A TEST MAY 1ST 2007 AND NEVER HAD A HEARING FOR THE MAY 2 2007 TEST.

27. PART OF MY DEFENSE WOULD HAVE BEEN THAT "6"
THE "QUICK SCREEN FIVE" TESTING CUP IS FOR PRELIMINARY
RESULTS ONLY AND CANNOT BE CONSIDERED CONCLUSIVE
WITHOUT BEING SENT TO AN OUTSIDE LAB. AND STATEVILLE
ACCEPTS THE RESULTS AS IS.

28. 20 ILL. ADM. CODE CH I 504.50 (A)(2)
THE REVIEWING OFFICER SHALL REVIEW EACH DISCIPLINARY REPORT
AND DETERMINE WHETHER: THE DISCIPLINARY REPORT HAS BEEN
COMPLETED PROPERLY, IF NOT THE REVIEWING OFFICER SHALL MAKE
THE NECESSARY CORRECTIONS OR DIRECT THE REPORTING EMPLOYEE
TO DO SO BEFORE OFFENDER GOES TO THE ADJUSTMENT COMMITTEE.
THE OFFENDER SHALL BE PROVIDED WITH A COPY OF THE CORRECTED REPORT.
THE REVIEWING OFFICER SHALL FORWARD COPIES OF ALL MAJOR DISCIPLINARY
REPORTS TO THE HEARING INVESTIGATOR

29. "MAJOR LAKE" WHO WAS THE REVIEWING OFFICER HAD AN
OPPORTUNITY TO CORRECT THE DATE OR DIRECT THE REPORTING
OFFICER TO DO SO, BECAUSE ALONG WITH TICKETS THERE ARE INCIDENT
REPORTS THAT ARE FOR EMPLOYEE'S EYES ONLY.

30. 20 ILL. ADM. CODE CH. I. SEC 504.60 (c). STATES THAT THE
HEARING INVESTIGATOR MAY CORRECT OR DIRECT THE REPORTING EMPLOYEE
TO CORRECT ANY ERRORS IN THE DISCIPLINARY REPORT. THE OFFENDER SHALL
BE PROVIDED WITH A COPY OF THE CORRECTED REPORT BEFORE OFFENDER GOES
TO THE ADJUSTMENT COMMITTEE.

31. THE HEARING OFFICER "CLEO JOHNSON" HAD AN OPPORTUNITY
TO CORRECT THE DATE OR DIRECT THE REPORTING EMPLOYEE TO DO
SO. BECAUSE ALONG WITH TICKETS THERE ARE INCIDENT REPORTS
THAT ARE FOR EMPLOYEE'S EYES ONLY

32. BOTH MAJOR LAKE AND CLEO JOHNSON ALLOWED ME TO BE FOUND
GUILTY OF A MAY 1ST 2007 DRUG TEST WHICH NEVER HAPPENED AND A MAY
2, 2007 TEST THAT I NEVER WENT TO THE ADJUSTMENT COMMITTEE
TO DEFEND MYSELF FOR.

33. AS A RESULT OF THE ABOVE FALSE DISCIPLINARY TICKET I RECEIVED 6 MONTHS PUNITIVE SEGREGATION, 6 MONTHS NON-CONTACT VISITS AND 6 MONTHS C-GRADE.

34. I FILED SEVERAL GRIEVANCES PERTAINING TO THIS DRUG TEST MATTER AND THE INTERNAL AFFAIRS THREATS AND HARASSMENT.

35. I ALSO WROTE IDOC DEPUTY DIRECTOR ROBERTA FEWS ABOUT THE SAME MATTERS.

36. IDOC OFFICIALS SENT AN INVESTIGATOR TO SPEAK TO ME ABOUT THESE MATTERS

37. I FILED SEVERAL GRIEVANCES ON THESE MATTERS THROUGH COUNSELOR ED BUTKIEWICZ, GRIEVANCES OFFICERS TAMMY GARCIA AND AMI WORKMAN AND WARDEN TERRY MCCANN. THEY ALL IDLY, APPROVED, CONDONED, AND ASSISTED WITH THEIR CONDUCT BY PURPOSEFULLY DENYING MY GRIEVANCES

38. LT. JOHNSON WAS THE HEAD OF THE ADJUSTMENT COMMITTEE AND FOUND ME GUILTY AND ISSUED THE 6 MONTH PUNITIVE SEGREGATION RECOMMENDATION.

39. AFTER BEING DENIED RELIEF THROUGH THE GRIEVANCE BY THE DEFENDANTS NAMED IN PARAGRAPH 36 I FORWARDED MY GRIEVANCE TO THE ADMINISTRATIVE REVIEW BOARD (ARB) IN SPRINGFIELD, ILLINOIS AS THIS IS THE PROCEDURE. THE ARB, THEREAFTER, EXPUNGED MY TICKET AND HAD ME RELEASED FROM SEGREGATION.

40. BY THAT DATE - THE DAY I WAS RELEASED FROM SEGREGATION STATUS (SEPTEMBER 27, 2007) I HAD BEEN IN SEGREGATION FOR 4 MONTHS AND 25 DAYS.

41. WHILE IN PUNITIVE SEGREGATION I HAD TO ENDURE THE FOLLOWING CRUEL AND UNUSUAL LIVING CONDITIONS.

42. I WAS CONFINED TO A 2 MAN CELL THAT WAS 4 x 9 IN SIZE.

43. I WAS ONLY GIVEN ONE HR OF RECREATION A DAY THAT CONSISTS OF 5 HOURS ON A SMALL, CAGED IN YARD. THE OTHER 6 DAYS OF THE WEEK I WAS CONFINED 24 HRS IN MY CELL.

44. THERE WERE NO T.V.'S, RADIO'S OR TYPE WRITERS ALLOWED.

45. I WAS NOT ALLOWED TO BUY FOOD FROM THE PRISONER COMMISSARY

46. THE FOOD THEY SERVED FROM THE KITCHEN WAS ALWAYS HALF COOKED, WAS AN INADEQUATE AMOUNT FOR A GROWN MAN, AND WAS ALWAYS COLD BECAUSE THE OFFICERS LET IT SIT ON THE CHUCK HOLE OUTSIDE THE CELL BEFORE FEEDING.

47. I LOST CLOSE TO 30 lbs BECAUSE OF THIS

48. I COULD NOT USE THE PHONE.

49. I HAD TO BE SHACKLED AND HANDCUFFED WITH A BOX AND AND CHAIN AROUND MY WAIST AND CHAINED TO THE FLOOR WHILE VISITING MY FAMILY THROUGH A GLASS WHERE THEY COULD SEE ALL OF THIS. LIKE I WAS AN ANIMAL.

50. THE CELLS WERE EXTREMELY DIRTY AND HAD LAYERS OF DECADES OLD LEAD PAINT ON THE WALLS.

51. I WAS NOT PROVIDED WITH ANY CLEANING SUPPLIES BECAUSE NONE ARE ISSUED IN THE PUNITIVE SEGREGATION UNIT.

52. THERE IS AN EXTREMELY MASSIVE AMOUNT OF ROACHES AND MICE IN SEGREGATION UNIT. THE ROACHES LITERALLY CRAWLED ON ME ALL NIGHT AND CAUSED ME TO LOSE REST.

53. THE TOILET FLUSHES ONCE EVERY 15 MINUTES WHICH CAUSED ME TO SMELL MY CELLMATE'S FECES AND MY OWN.

54. I WAS GIVEN ONE 10 MINUTE SHOWER A WEEK WITH WATER THAT HAD LOW PRESSURE

55. THERE WAS NO MEANINGFUL ACCESS TO THE LAW LIBRARY "9" BECAUSE THERE WAS NO ACCESS TO THE LAW LIBRARY.

56. I WAS GIVEN 2 FILTHY, STAINED, TORN SHEETS AND A FILTHY URINE STAINED MATTRESS.

57. THE ELECTRICAL SOCKETS ARE 1½ FEET AWAY FROM THE WATER FAUCET WHERE I HAD TO WASH UP EVERY DAY.

58. BREAKFAST WAS SERVED BETWEEN 2:00 AM - 3:00 AM WHICH HURT MY ESOPHEGUS

59. I BROKE OUT WITH RED BUMPS ALL OVER ME BECAUSE IT WAS SO DIRTY

60. AFTER I WAS RELEASED FROM SEGREGATION I WAS PLACED IN THE SAME UNIT, ON WHAT IS CALLED TEMPORARY HOUSING STATUS.

61. IN TEMPORARY HOUSING STATUS I HAD TO ENDURE ALMOST ALL OF THE SAME CRUEL AND UNUSUAL LIVING CONDITIONS.

62. WHILE IN TEMPORARY HOUSING STATUS AN OPENLY HOMOSEXUAL PRISONER NAMED MAGGETTE WAS LET OUT OF SEGREGATION AND CAME IN FRONT OF THE CELL I WAS ASSIGNED TO.

63. PRISONER MAGGETTE TOLD ME I WAS CUTE AND THAT HE LIKED ME. I TOLD HIM I AM NOT GAY AND HE WENT ON TO SAY THAT OFFICERS TOLD HIM TO MOVE IN THE CELL WITH ME. WHICH MADE ME FEEL UNSAFE BECAUSE MAGGETTE CONTINUED TO SAY I WAS CUTE AND HOW EVERYTHING WOULD BE GOOD WHEN HE MOVED IN.

64. I CONVEYED MY FEELINGS OF CONCERN TO C/O JACKSON AND SGT MCDOWELL BECAUSE PRISONER MAGGETTE WAS JUST LET OUT OF SEGREGATION STATUS FOR HAVING SEX WITH ANOTHER PRISONER WHILE IN PROTECTIVE CUSTODY. I WAS GENUINELY CONCERNED ABOUT MY SAFETY.

65. C/O JACKSON AND SGT. McDOWELL DENIED MY REQUEST "10" TO MOVE IN ANOTHER CELL EVEN THOUGH THERE WERE SEVERAL CELLS UNOCCUPIED.

66. C/O JACKSON AND SGT McDOWELL LAUGHED AT ME AND TOLD ME TO LET MAGGETTE LIVE WITH ME BECAUSE I MIGHT LIKE BECOMING A HOMOSEXUAL. I CONTINUED TO REFUSE.

67. SGT McDOWELL SAID HE WAS TOLD TO PUT MAGGETTE IN THE CELL WITH ME AND I HAD TO LIVE WITH HIM OR GO BACK TO SEGREGATION.

68. SO I WAS PLACED BACK IN SEGREGATION FOR THIS INCIDENT AND HEARD A TICKET IN FRONT OF THE ADJUSTMENT COMMITTEE, THIS TIME HEADED BY CLEO JOHNSON.

69. I EXPLAINED TO CLEO JOHNSON WHAT HAPPENED AND SHE FOUND ME GUILTY OF DISOBEYING A DIRECT ORDER AND GAVE ME ANOTHER 30 DAYS OF SEGREGATION.

70. WHILE IN SEGREGATION FOR THE INCIDENT WITH MAGGETTE I HAD TO ENDURE THE CRUEL AND UNUSUAL CONDITIONS DESCRIBED IN PARAGRAPHS 40-59.

71. AFTER SERVING MY 30 DAY SEGREGATION TIME I WAS PLACED BACK IN TEMPORARY HOUSING STATUS IN THE SAME UNIT AND STAYED THERE FOR ANOTHER 45 DAYS AND WAS FINALLY MOVED TO GENERAL POPULATION.

72. I STAYED IN THE SEGREGATION UNIT. FROM MAY 2, 2007— DECEMBER 28, 2007

73. I FILED SEVERAL GRIEVANCES ABOUT THE INCIDENT WITH C/O JACKSON, SGT McDOWELL AND PRISONER MAGGETTE.

74: ED BUTKIEWICZ, TAMMY GARCIA AND TERRY McCANN
DISMISSED MY GRIEVANCES

75. I FORWARDED MY GRIEVANCES TO THE ARB IN SPRINGFIELD,
ILLINOIS AND STILL RECEIVED NO RELIEF

76. THE INCIDENT WITH MAGGETTE OCCURRED ON OCT 12 2007,
I WENT IN FRONT OF THE ADJUSTMENT COMMITTEE OCT 19 2007,

COUNT 1 - RETALIATION FOR EXERCISING FIRST AMENDMENT
RIGHT TO SEEK REDRESS OF GRIEVANCES IN VIOLATION OF THE
EIGHTH AMENDMENT.

(77). PLAINTIFF HEREIN RE-ALLEGES AND INCORPORATES PARAGRAPHS
1-76 INTO THIS COUNT.

(78) BY THE FOREGOING ACTS, LT EDWARDS, C/O RODRIGUEZ, C/O KATISA,
C/O TARR, ED BUTKIEWICZ, TAMMY GARCIA, ANTI WORKMAN, TERRY MCCANN
MAJOR LAKE, CLEO JOHNSON AND LT D. JOHNSON SUBJECTED PLAINTIFF
TO CRUEL AND UNUSUAL PUNISHMENT FOR EXERCISING HIS FIRST
AMENDMENT RIGHT.

WHEREFORE, PLAINTIFF JONES REQUEST:

A. REASONABLE AND APPROPRIATE COMPENSATORY DAMAGES
ARISING FROM THE WRONGFUL CONDUCT OF THE DEFENDANTS
NAMED IN PARAGRAPH 78!

B. PUNITIVE DAMAGES FROM THESE DEFENDANTS IN AMOUNT TO BE
ASCERTAINED AT TRIAL;

C. COST, EXPENSES, AND REASONABLE ATTORNEY FEES PURSUANT TO
42 U.S.C. 5 1988; AND

D. SUCH OTHER RELIEF AS THIS COURT DEEMS NECESSARY
AND PROPER

COUNT II Case 1-08-cv-04091 Document 11 Filed 09/02/08 Page 16 of 85 (58) RETALIATION IN VIOLATION OF FIRST (1st) AMENDMENT

79. PLAINTIFF HEREIN RE ALLEGES AND INCORPORATES PARAGRAPHS 1-76 INTO THIS COUNT.

80. BY THE FOREGOING ACTS, C/O RODRIGUEZ, SGT MCDOWELL, C/O JACKSON, CLEO JOHNSON, ED BUTKIEWICZ, TAMMY GARCIA, TERRY MCCANN, SUBJECTED PLAINTIFF TO CRUEL AND UNUSUAL PUNISHMENT FOR REFUSING TO BE CELLED WITH A KNOWN HOMOSEXUAL WHO TRIED TO MAKE SEXUAL ADVANCES ON PLAINTIFF. C/O RODRIGUEZ, ALSO MADE SEXUAL ADVANCES BY SAYING "I HAVE A REAL HARD ON FOR YOU" TO PLAINTIFF SUBJECTING PLAINTIFF TO CRUEL AND UNUSUAL PUNISHMENT.

COUNT III    PUNISHMENT WITHOUT DUE PROCESS OF LAW

81. PLAINTIFF HEREIN RE-ALLEGES AND INCORPORATES PARAGRAPHS 1-76 INTO THIS COUNT.

82. AS A PRISONER, PLAINTIFF POSSESSED A LIBERTY INTEREST IN NOT BEING PUNISHED WITHOUT DUE PROCESS OF LAW.

83. CONFINEMENT IN THE SEGREGATION UNIT FOR ALMOST 8 MONTHS AUTHORIZED BY MAJOR LAKE, CLEO JOHNSON, LT.D. JOHNSON, ED BUTKIEWICZ, TAMMY GARCIA, AMMI WORKMAN AND TERRY MCCANN CONSTITUTED PUNISHMENT.

84. PLAINTIFF RECEIVED THIS PUNISHMENT (6 MONTHS PUNITIVE SEGREGATION) WITHOUT DUE PROCESS PROTECTIONS TO WHICH HE IS ENTITLED, INCLUDING NOTICE OF CHARGES WITHIN 8 DAYS, INVALID DRUG TESTING CUPS, A RIGHT TO PRESENT A DEFENSE AT A HEARING.

WHEREFORE, PLAINTIFF REQUEST:

A. REASONABLE AND APPROPRIATE COMPENSATORY DAMAGES ARISING FROM THE WRONGFUL CONDUCT OF THE DEFENDANTS NAMED IN PARAGRAPH 83;

B. PUNITIVE DAMAGES FROM THESE DEFENDANTS IN AN AMOUNT TO BE ASCERTAINED AT TRIAL;

C. COST, EXPENSES, AND REASONABLE ATTORNEY FEES PURSUANT TO 42 U.S.C. S 1988; AND

D. SUCH OTHER RELIEF AS THIS COURT DEEMS NECESSARY AND PROPER.

COUNT IV - CRUEL AND UNUSUAL LIVING CONDITIONS IN VIOLATION OF THE EIGHTH AMENDMENT.

85. PLAINTIFF HEREIN RE-ALLEGES PARAGRAPHS 1-76 INTO THIS COUNT

86. BY THE FOREGOING ACTS, LT EDWARDS, C/O RODRIGUEZ, C/O KAJTSA, C/O TARR, MAJOR LAKE, CLEO JOHNSON, LT D. JOHNSON, ED BUTKIEWICZ, TAMMY GARCIA, AMI WORKMAN, TERRY MCCANN, C/O JACKSON, SGT MC DOWELL, ALL JOHN/JANE DOE SERGEANTS AND LIEUTENANTS SUPERVISING THE SEGREGATION UNIT AND SANITATION SUPPLIES IN SEGREGATION UNIT. SUBJECTED PLAINTIFF TO THE CRUEL AND UNUSUAL LIVING CONDITIONS IN THE SEGREGATION UNIT.

WHEREFORE, PLAINTIFF REQUEST

A. REASONABLE AND APPROPRIATE COMPENSATORY DAMAGES ARISING FROM THE WRONGFUL CONDUCT OF THE DEFENDANTS NAMED IN PARAGRAPH 86;

"14"

B. PUNITIVE DAMAGES FROM THESE DEFENDANTS IN AN AMOUNT TO BE ASCERTAINED AT TRIAL:

C. COST, EXPENSES, AND REASONABLE ATTORNEY FEES PURSUANT TO 42 U.S.C. S 1988: AND.

D. SUCH OTHER RELIEF AS THIS COURT DEEMS NECESSARY AND PROPER.

COUNT V - PAYMENT FOR IDEMNIFICATION BY ILLINOIS

87. PLAINTIFF HEREIN REALLEGES AND INCORPORATES PARAGRAPHS 1-86 INTO THIS COUNT.

88. PURSUANT TO 5 ILCS 350/2(d), DEFENDANT STATE OF ILLINOIS IS EMPOWERED AND DIRECTED TO PAY ANY TORT JUDGEMENT FOR COMPENSATORY DAMAGES (AND ANY ASSOCIATED ATTORNEY'S FEES AND COSTS) FOR WHICH A STATE EMPLOYEE, SUCH AS DEFENDANTS, ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT IS FOUND LIABLE. THEREFORE, IN THE EVENT A JUDGEMENT FOR COMPENSATORY DAMAGES IS ENTERED AGAINST THESE DEFENDANTS, THE COURT SHOULD DIRECT DEFENDANT (STATE OF ILLINOIS) TO PAY THE JUDGEMENT AS WELL AS THE ASSOCIATED ATTORNEY'S FEES AND COST.

WHEREFORE, PLAINTIFF REQUEST THE COURT TO ORDER STATE OF ILLINOIS TO PAY ANY JUDGEMENT FOR THE COMPENSATORY DAMAGES (AND ANY ASSOCIATED ATTORNEY FEES AND COSTS) FOR WHICH THE INDIVIDUAL DEFENDANTS ARE FOUND LIABLE.

## V.    Relief:

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

A. REASONABLE AND APPRPRIATE COMPENSATORY DAMAGES ARISING FROM THE WRONGFUL CONDUCT OF DEFENDANTS, B. PUNITIVE DAMAGES FROM THESE DEFENDANTS IN AN AMOUNT TO BE ASERTAINED AT TRIAL. C. COST, EXPENSES, AND REASONABLE ATTORNEY FEES PURSUANT TO 42 U.S.C. 5 1988: AND D. SUCH OTHER RELIEF AS THIS COURT DEEMS NECESSARY AND PROPER.

VI.    The plaintiff demands that the case be tried by a jury.   ☒ YES     ☐ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed _ 24 _ day of _AUGUST_ , 20 08

_____B. Jms_____
(Signature of plaintiff or plaintiffs)

_BRIAN JONES_
(Print name)

_K56957_
(I.D. Number)

_STATEVILLE C.C.  P.O. Box 112_
_JOLIET, IL  60434_
(Address)

6

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

BRIAN JONES
#K56957

(1)

MR SIMS,

I'M WRITING YOU ABOUT A
BOGUS DRUG TEST THAT INTERNAL
AFFAIRS PUT ON ME FOR RETALIATION.
WE ALREADY SPOKE FACE TO FACE
AND I KNOW ITS MY WORD
AGAINST THEIRS, BUT WHAT I'M
ABOUT TO TELL YOU NOW I HAVE
IN REFUTABLE EVIDENCE THAT
I'VE BEEN IN SEG FOR THIS
TICKET FOR ALMOST 90 DAYS
AND I'VE NEVER BEEN TO THE
ADJUSTMENT COMMITTEE. NOW
THERE IS NO SECRET THAT THE
QUICK SCREEN 5 CUP THAT INTERNAL
AFFAIRS USE TO DRUG TEST
INMATES ARE FOR PRELIMINARY
USE ONLY AND ALL POSITIVE
RESULTS MUST BE CONFIRMED
BY OTHER METHODS WHICH OFFICERS
NEVER DO. MY FAMILY HAS
INVESTIGATED THESE CUPS
AND SENT ME A PAMPHLET
ON THE CUP FROM THE
MANUFACTURES WHO ARE

EXPRESS DIAGNOSTICS, AND
PHARMA TECH INC. I SENT THIS
INFO TO DEPUTY DIRECTOR FEWS.
I HAVE GRIEVANCES ON THAT
ISSUE SO I WON'T BOTHER YOU
WITH THAT. BUT THIS IS ILLEGAL
ACTIVITY WHAT I'M ABOUT TO
TELL YOU AND I HAVE PHYSICAL
PROOF. I GOT A TICKET MAY 3RD
SAYING I TOOK AND FAILED A
DRUG TEST MAY IST WHICH WAS
A BLATANT LIE. I WENT TO THE
ADJUSTMENT COMMITTEE MAY 9TH.
AND TOLD THE TRUTH I NEVER TOOK
A DRUG TEST MAY IST PERIOD
SO THAT WAS THE END OF THAT.
I RECEIVE ANOTHER TICKET
MAY 14TH SAYING I TOOK AND
FAILED A TEST MAY 2ND. THEY
WROTE THIS TICKET MAY 11TH.
SO FINE I WAS PREPARED WITH
MY DEFENSE WHICH WAS THIS.
I DON'T DO DRUGS PERIOD. I.A.
THREATENED ME A WEEK BEFORE
THIS TEST, I RECEIVE THE TICKET
FOR THIS MAY 2ND TEST ON

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

(3)

MAY 11TH WHICH IS ILLEGAL, THE
CUPS ARE NOT CONCLUSIVE
CUPS. AND MY TICKET SHOULD BE
THROWN OUT, THATS WHAT MY
DEFENSE IS. ITS 7-22-07 AND
I STILL HAVN'T BEEN TO THE
ADJUSTMENT COMMITTEE.
SO IVE BEEN WRITING GRIEVANCES
AND LETTERS TO COUNSELOR
BUTKIEWICZ AND GRIEVANCE
OFFICER AMIE WORKMAN.
SO TOLD ME THAT
THE COMMITTEE TOLD HIM I
WENT TO THE HEARING ON THE
CORRECT TICKET 5-15-07
THIS WAS JULY 10TH.
SO I SAID THATS A LIE I NEVER
GOT A SUMMARY BECAUSE I
NEVER HAD A HEARING I'M
JUST SITTING IN SEG ILLEGALLY.
SO I WROTE THE GRIEVANCE
OFFICER ABOUT THIS. WHICH SHE
COPIED THE LETTER AND I
HAVE HER HANDWRITING
RESPONDING TO THE LETTER
I TOLD THEM IN THE LETTER

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

(4)

I TALKED TO INVESTIGATOR SIMS
AFTER 5-1507 AND HE KNOWS
I HAUNT BEEN TO THE COMMITTEE
SO IF you Guys LET IT WILL
BE EXPOSED. SO A FEW DAYS
LATER THE COUNSELOR CAME
TO my DOOR AND SAID I TALKED
TO THE GRIEVANCE OFFICER WE
BOTH KNOW YOU NEVER BEEN
TO THE ADJUSTMENT COMMITTEE
FOR THE CORRECT TICKET THEY
SCREWED UP AND YOUR TICKET
SHOULD BE EXPUNGED BUT
GRIEVANCE OFFICER
WORKMAN WAS TOLD TO
NOT GRANT YOUR GRIEVANCE
I SAID THEY CANT TELL HER
THAT ALL INMATES HAVE
A RIGHT TO GO IN FRONT
OF THE ADJUSTMENT COMMITTEE
FOR THE CORRECT TICKET TO
DEFEND THERESELVES. I SAID
THATS IN THE RULE BOOK UNDER
THE 20 ILLINOIS ADMINISTRATIVE
CODE SUBCHAPTER SOY. THIS
IS ILLEGAL. THEN THE

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

③

COUNSELOR SAID I KNOW YOURE
100% RIGHT IF I WAS YOU I
WOULD WRITE SPRINGFIELD
AND THATS WHAT IM DING.
SO ON 7-26-07 I GET A
SUMMARY THAT THE WARDEN
SIGNED 7-18-07   SAYING
I WENT TO             THE
COMMITTEE 5-9-07 AND
I GOT A CORRECT TICKET
FOR A TEST ON 5-2-07 ON
5-14-07. BUT WHEN I WENT
5-9-07 IM GUILTY OF THE
TICKET I RECEIVED 5-14-07.
DOES IT MAKE SINCE OF
COURSE IT DOESNT BUT THIS
IS WHAT IS HAPPENING. WHEN
I GOT THE TICKET 5-14-07
ALL THEY HAD TO DO IS CALL
ME TO DEFEND MYSELF IN
FRONT OF THE COMMITTEE.
WHICH THEY NEVER DID.
I HAVE PROOF THAT THEY TRIED
TO LIE AND SAY I HEARD THE
TICKET 5-15-07 BUT CHANGED
IT WHEN I MENTIONED YOUR

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

NAME. I HAVE PROOF I RECEIVED THE TICKET 5-14-07 AND NEVER BEEN TO THE COMMITTEE AND I HAVE PROOF BY I.D.O.C. STAFF THAT THEY WERE TOLD BY OTHER I.D.O.C. STAFF IN A HIGHER POSITION TO NOT GRANT MY GRIEVANCE EVEN THOUGH THE RULES AND FILINGS LAW CLEARLY STATES INMATES MUST DEFEND THEIR SELVES WITH THE CORRECT TICKET. THIS IS NOT MY WORD AGAINST THEIRS I HAVE PHYSICAL EVIDENCE AND I.D.O.C. STAFF WHO CAN TELL YOU WHO EXACTLY TOLD THEM TO BREAK THE LAW. THEY GAVE ME 6 MONTHS SEG., 6 MONTHS NO-CONTACT VISITS & 6 MONTHS C-GRADE. FOR NOT ONLY A FABRICATED TICKET BUT A TICKET I NEVER HAD A CHANCE TO DEFEND MYSELF OF. PLEASE BE FAIR. YOU TOLD ME YOU WERE FAIR AND WRITE YOU WHEN ILLEGAL ACTIVITY HAPPENS. THANK YOU!

I IMPLORE YOU TO INVESTIGATE AND EXPUNGE THIS FROM MY RFORA AND LET ME OUT OF SEG.

PLEASE LET ME KNOW YOU RECEIVED THIS. B. Cruz    K56957

EVIDENCE FOR GRIEVANCE ~~ATTACHED~~

8-1-07

(1)

THIS IS ANOTHER GRIEVANCE
ABOUT THE ILLEGAL DRUG
TESTING GOING ON IN
STATEVILLE C.C.. THIS PATICULAR
GRIEVANCE IS PERTAINING
TO ME NEVER GOING TO THE
ADJUSTMENT COMMITTEE TO
DEFEND MYSELF. I WENT TO
THE ADJUSTMENT COMMITTEE
5-9-07. FOR A TICKET SAYING
I TOOK AND FAILED A TEST
5-1-07. I TOLD THE TRUTH AT
THE HEARING I NEVER TOOK
A TEST 5-1-07 PERIOD. NOW
ON 5-14-07 I RECEIVED
A TICKET SAYING I TOOK
AND FAILED A TEST 5-2-07.
ITS TRUE I TOOK A TEST
5-2-07 BUT WAS NEVER TOLD
I FAILED. IF I WAS CALLED INFRONT
OF THE ADJUSTMENT COMMITTEE
FOR THE CORRECTED TICKET
AS I AM SUPPOSE TO
BE AS SAID IN THE
STATEVILLE C.C. ORIENTATION

RECEIVED
AUG - 8 2007
OFFICE
INMATE

MANUAL, UNDER THE 20 ILLINOIS
ADMINISTRATIVE CODE CH.I
SEC 504 - SUB CHAPTER E.
I WOULD HAVE DEFENDED MYSELF
BY TELLING FIRST I DONT DO
DRUGS, INTERNAL AFFAIRS THREATENED
& HARASSED ME A WEEK BEFORE THIS
TEST, I NEVER WAS TOLD I WAS POSITIVE,
THE QUICK SCREEN 5 CUP TEST IS
ONLY FOR PRELIMINARY USE ONLY
AND MUST BE CONFIRMED THROUGH
ANOTHER METHOD TO BE CONCLUSIVE.
NOW IF THEY STILL WOULD HAVE
FOUND ME GUILTY SO BE IT. BUT
I HAVE A RIGHT TO DEFEND MYSELF
IN FRONT OF THE COMMITTEE WITH
THE CORRECT TICKET. I NEVER TOOK
A TEST 5-1-07 AND THATS WHAT
THIS TICKET SAIDS I DID
I WENT TO THE COMMITTEE 5-9-07
THE TICKET SAYING I TESTED AND
FAILED 5-2-07 WAS WRITTEN 5-11-07
I DIDNT RECEIVE IT UNTIL 5-14-07
AND AS YOU CAN SEE I NEVER
BEEN TO THE ADJUSTMENT
COMMITTEE TO DEFEND MYSELF

EVIDENCE FOR ATTACHED
GRIEVANCE  ②

FOR THE CORRECT TICKET WHICH
ALL INMATES MUST DO THE
TICKET FOR THE MAY 1ST INCIDENT
~~SHOULD~~ SHOULD BE NULL & VOID
BECAUSE I NEVER TOOK A TEST 5-1-07.
THE TICKET ~~AND~~ FOR THE MAY 2ND
TEST WAS SERVED TO ME
5-14-07 12 DAYS AFTER THE
ALLEGE OFFENSE AND I NEVER
HAD A CHANCE TO GO IN FRONT
OF THE COMMITTEE TO DEFEND
MYSELF, SO IT SHOULD ALSO
BE NULL & VOID. I SENT DEPUTY
DIRECTOR ROBERTA FEWS ALL TICKETS
AND OTHER RESPONSES FROM THE
GRIEVANCE OFFICERS. ALSO COUNSELOR
BUTKIEWICZ OF STATEVILLE C.C.
HAS OTHER COPIES OF MY TICKETS
BUT REFUSES TO SEND THEM BACK.
PLEASE GET COPIES FROM EITHER.
I BEG YOU TO EXPEDITE THIS
AS YOU CAN SEE I WENT TO
THE HEARING ON 5-9-07 BUT
THE FINAL SUMMARY WASN'T
SIGNED UNTIL 7-17-07
ITS ALL RELATIVE. I AM

RECEIVED
AUG - 8 2007
OFFICE OF
INMATE ISSUES

SENDING A COPY OF THE
SUMMARY THAT CLEARLY STATES
THE TICKET IS FOR A 5-1-07
INCIDENT BUT THEY FOUND
ME GUILTY FOR AN OFFENSE
5-2-07. BUT REMEMBER I
DIDN'T RECEIVE THE TICKET
FOR THE 5-2-07 TO 5-14-07
SO HOW AM I GUILTY 5-9-07.
ITS IMPOSSIBLE & ILLEGAL

PLEASE CONSIDER

THIS WITH GRIEVANCE

THANK YOU

BRIAN JONES
#K56957

RECEIVED
AUG 8 2008
INMATE OFFICE ISSUED



**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

# Illinois
### Department of
# Corrections

Stateville Correctional Center / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607 / TDD: (800) 526-0844

# M E M O R A N D U M

DATE:      September 24, 2007

TO:      Jones      K56957

FROM:      Tammy Garcia CC2
           Grievance Officer

SUBJECT: DR 200700843/2

The above mentioned DR has been expunged by the ARB. They have forwarded their findings to Stateville Correctional Center. The memorandum has been received at this institution and is being forwarded to the Adjustment Committee for their handling.

It is now an issue that must be dealt with through the Adjustment Committee. Any further concerns should be addressed through your assigned counselor.

I trust this has addressed your issue pertaining to your grievances.

JONES # 412

DOC INMATE ISSUES

## GOOD CONDUCT CREDITS/STATUTORY GOOD TIME RESTORATION/REVOCATION RECOMMENDATION

☐ Disapprove
☐ Approve
☐ Reduced _____ (Amount)

Recommendation from: __STATEVILLE__     CAO: __TERRY L. McCANN__ Deputy Dir.: _____ (Juv./CSD Div.)
(Institution)

Name: __JONES, BRIAN__     Register No. __K56957__     Date Request Submitted: __8/6/07__

Present Location: __STATEVILLE__     Committed Person's MSR: __8-28-38 @ ____

☐ Minimum Sentence
☐ Maximum Sentence

**Good Conduct Credits**
☒ Revoke    ☐ Restore

**Statutory Good Time**
☐ Revoke    ☐ Restore

**Violation Numbers**

Report Date(s)
504A/504B/504C Violation:

☒ Recommended Amount of Revocation     DR __5-1-07 (00843)__   NO. __203__
__6 MONTHS__                             DR _____           NO. _____

Report Date(s)
504A/504B/504C Violation:                              Violation Numbers

☐ Recommended Amount of Restoration     DR _____   NO. _____
                                        DR _____   NO. _____

Description of Offense: __DRUGS & DRUG PARAPHERNALIA__

Committed Person has had __0__ of GCC/SGT revoked within last 12 months.
Committed Person has had __0__ of GCC/SGT restored within last 12 months.

Other Recommendations Pending:     ☒ No     ☐ Yes
Dates of Revocation(s) Pending and Amounts     Dates of Restoration(s) Pending and Amounts

N4B

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **IDOC ACTION**

☐ One (1) Month or Under    ☒ Over One (1) Month

The following recommendation has been reviewed to determine compliance with Department of Corrections Rules.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    Resubmission: _____
☐ Remand    Date _____  Designee _____     Date _____
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Recommendation for     RESTORATION / (REVOCATION) of __6 mos__
of Good Conduct Credits/Statutory Good Time    (APPROVED) / (DISAPPROVED)

ADDITIONAL COMMENTS OR INSTRUCTIONS

_Due to inconsistency of reporting date._
_DR to be expunged_     __8/14/07__
_____ /Director     Date

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **PRISONER REVIEW BOARD ACTION**

☐ Continuance

Hearing/Review Date: _____

Comments: _____

Board Action:     REVOCATION / RESTORATION    ☐ Approved  ☐ Denied  ☐ Reduced _____
                                                Amount Approved _____   Date _____

_____     _____     _____
Signature              Signature              Signature

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* __6 mos__ APPROVED / DISAPPROVED. Please proceed accordingly.

Recommendation of RESTORATION / (REVOCATION) of
with adjusting by institution of person's records.
_____ Director     __9/11/07__
                                Date

Master Record File
Director
Prisoner Review Board (2)

DCA 5588 (3/98)

7-26-07

BRIAN Joggs #K56957

JUL 2007
RECEIVED
Program Services

DIRECTOR FEWS

I'M SENDING YOU 5 DIFFERENT
ENVELOPES INCLUDING THIS ONE.
THIS IS NOT my WORD AGAINST
THERE WORD THIS TIME THIS
IS INREFUTABLE EVIDENCE
OF THE ILLEGAL ACTION BY
THESE STAFF WORKERS THEY DONT
FOLLOW NO LAWS UNDER 20 ILLINOIS
ADMINISTRATIVE CODE CH-I
SEC 504, SECTIONS 504-60
504-50, 504-30 - 504-80 ARE
BEING BROKEN AND THEY WOULD HAVE
COMMITTED FRAUD IF THEY HADNT
KNOW AN INVESTIGATOR SPOKE TO
ME ABOUT THESE BOGUS CHARGES.
I SENT YOU THIS LETTER AND
4 OTHER ENVELOPES CONTAINING
GRIEVANCES, GRIEVANCE OFFICER
RESPONSES, & LETTERS I WROTE TO
THE GRIEVANCE OFFICER. I WOULD
HAVE WROTE SOONE BUT I JUST GOT
A SUMMARY 7-26-07 FOR A HEARING
I HAD 5-9-07. PLEASE WRITE BACK AND
LET ME KNOW YOU RECEIVED A TOTAL

RECEIVED
JUL 3 1 2007
OFFICE OF
INMATE ISSUES

OF 5 ENVELOPES.    THANK YOU

SINCERELY

B.

K56957

ONCE AGAIN
I BEG YOU FOR THE A.R.B
TO EXPEDITE THIS BECAUSE I
JUST RECEIVED THE SUMMARY
7-26-07 FOR A HEARING THAT
TOOK PLACE 5-9-07 FOR A
TICKET I RECEIVED 5-14-07.
I KNOW IT DOESNT MAKE SINCE
HENCE THE CONSPIRACY AND MY
REASONS FOR WRITING YOU.

RECEIVED
JUL 3 1 2007
OFFICE OF INMATE ISSUES

FROM: BRIAN JONES #K56957

RECEIVED
OCT 2007
RECEIVED
Program Services

OFFICE OF
INMATE ISSUES

RECEIVED
OCT 17 2007

DIRECTOR FEWS,

I'm WRITING you FOR COPIES OF SOME IMPORTANT PAPERWORK, I SENT you my DISCIPLINARY REPORTS, GRIEVANCES, LETTERS, & GRIEVANCE OFFICER RESPONSE AND A PAMPHLET ABOUT THE SCREEN S DRUG TEST CUP. YOU SUBSEQUENTLY SENT THIS INFO TO THE A.R.B TO SUPPORT my GRIEVANCE AGAINST THESE FASCIST, ROGUE I.A. INVESTIGATORS, THESE BOGUS DRUG CUPS AND THE RETALIATION THAT LANDED ME IN SEG FOR ALMOST 5 MONTHS. ANYWAY THE A.R.B. EXPUNGED my TICKET AND LET ME OUT OF SEG PROVING THIS SITUATION WAS BOGUS. NOW WHAT I NEED IS COPIES OF my TICKETS, GRIEVANCES, GRIEVANCE OFFICER RESPONSE. BASICALLY ALL THE INFO I SENT YOU I NEED COPIES OF FOR my PERSONAL FILE. THANK you FOR BEING A FAIR PERSON AND TREATING ME LIKE A REAL PERSON. PEACE & RESPECT. B. Jns

K56957

THE TICKETS ARE FROM A MAY1ST &
MAY 2nd ISSUE AND THE GRIEVANCES
PERTAIN TO THESE INCIDENTS. THE
A.R.B. EXPUNGED THESE BOGUS TICKETS



**Illinois
Department of
Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker, Jr.**
Director

Stateville Correctional Center / Rt. 53 / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727 -3607 / TDD: (800) 526-0844

# MEMORANDUM

DATE: 7-13-07

TO: Jones-K56957

FROM:    A. Workman, Corr. Couns. II
         Grievance Office

SUBJECT:    **ATTACHED GRIEVANCE -**

The attached grievance is being returned for the following reason:

_____    It needs to be rewritten and submitted to your counselor on the attached Committed
          Person's Grievance Report.

_____    It was not filed within 60 days of discovery of the incident, occurrence, or
          problem which gives rise to the grievance as required in DR 504F, Grievance
          Procedures for Committed Persons.

_____    Issue needs to be discussed with your counselor for possible resolution.

_____    No issue outlined in grievance.

_____    It appears that no attempt has been made to resolve the issue as required by DR
          504F.

__X__    Issue is currently being reviewed by _me_ .

_____    Issue previously addressed.  No justification for further action.

_____    Forward to Administrative Review Board

__X__ Other: I have your grievance. I'm investigating this
          and have been since I received it on June 17th.
JT:aw     Just be patient until I can get to the bottom
cc:    file    of it & you'll receive the decision via mail.

GRIEVANCE OFFICER WORKMAN.

I JUST GOT SOME DISTURBING
NEWS FROM COUNSELOR BUTKIEWICZ.
HE TOLD ME THE DISCIPLINARY
REPORT THAT I RECEIVED MAY 14 2007
FOR AN ALLEGE OFFENSE THAT
HAPPENED MAY 2 2007, HE TOLD
ME THE ADJUSTMENT COMMITTEE
SAID I HEARD THIS TICKET ALREADY.
THIS IS A FLAT OUT BLATANT
LIE !!! THIS IS UNREAL WHAT
THEIR TRYING TO DO, NOT TO
MENTION ILLEGAL. FIRST OF
ALL UNDER THE 20 ILLINOIS
ADMINISTRATIVE CODE SECTION
504 - SUBCHAPTER E. IN THE
STATEVILLE C.C. ORIENTATION
MANUAL IT WILL PROVE THIS
WHOLE THING IS ILLEGAL PLEASE
LOOK UNDER SECTIONS 504-80,
504-60, 504-50 & 504-30
AND you WILL SEE IN
NO EVENT CAN THEY GIVE
ME A TICKET AFTER 8 DAYS
OF THE ALLEGE OFFENSE. (504-30).

AND THEY CLEARLY GAVE ME
THIS TICKET ON MAY 14 WHEN
THEY SAID IT HAPPENED.
ALSO I HAVE THE RIGHT TO APPEAR
IN FRONT OF THE ADJUSTMENT
COMMITTE FOR EACH TICKET I
RECEIVE AND I RECEIVED THE
TICKET MAY 14 FOR AN ALLEGE
OFFENSE THAT HAPPENED MAY 2ND
AND TODAY IS JULY 11TH AND I
STILL HAUN'T BEEN TO THE
COMMITTEE. I DID HOWEVER
GO TO THE COMMITTE MAY 9TH
FOR AN OFFENSE THEY SAY HAPPENED
MAY 1ST, I TOLD THE COMMITTEE
PLAIN & SIMPLE I NEVER
TOOK A DRUG TEST MAY 1ST PERIOD.
I WAS TOLD IF I DIDN'T TAKE
A TEST MAY 1ST YOU HAVE NOTHING
TO WORRY ABOUT. SO TODAY
I GET A ~~COMPLETE~~ SUMMARY FROM
THE MAY 1ST AND ITS SAYS
THE FINAL SUMMARY AS OF
JUNE 26TH IS CONTINUED. HOW
IN THE WORLD IS THE
FINAL STATUS FOR A TICKET

CONTINUED? ITS ~~XXXX~~ ILLOGICAL,
AND THE HEARING TOOK PLACE MAY 9TH
IT GETS TO THE WARDEN DESK
ON ~~XXX~~ 6-26-07 TO SIGN? THESE
PEOPLE HAVE THE WARDEN SIGNING
ILLEGAL & FABRICATED DOCUMENTS.
SO ANY~~MO~~ DEPUTY DIRECTOR ROBERTA
FEWS SENT INVESTIGATOR LARRY
SIMS TO TALK TO ME ON 5-24 OR
5-31-07 ABOUT THESE FASCISTS I.A.
OFFICERS HARASSING & THREATING
ME AND ABOUT THE FABRICATED
TICKETS I HAVE, HE KNOWS I HAVN'T
BEEN TO THE ADJUSTMENT COMMITTEE
FOR THE MAY 2ND TICKET AND HE
KNOWS I GOT IT 12 DAYS AFTER
THE OFFENSE HAPPENED HE THOUGHT
IT WOULD BE RESOLVED WHEN I
WENT TO THE COMMITTEE BUT THAT
NEVER HAPPENED THE COUNSELOR TOLD
ME THE COMMITTE SAID I WENT
ON ~~X~~ MAY 15TH 2007. I HAVE
SO MUCH PROOF THATS A LIE.
FIRST CONTACT INVESTIGATOR
~~XXX~~ LARRY SIMS FROM SPRINGFIELD
BECAUSE HE HAS DOCUMENTS

BRIAN JONES
# 56957

④

TO PROVE I DIDN'T GO TO THE
ADJUSTMENT COMMITTEE SINCE
MAY 9th AND ESPECIALLY NOT
THE MAY 15th BECAUSE I
TALKED TO HIM FACE TO FACE
AFTER THAT DATE. 2ND OF ALL
WHATEVER DATE THEY FABRICATE
I BEG YOU TO CHECK
THE PRINT OUT SHEET TO WHO
WAS SUPPOSE TO GO TO THE COMMITTEE
THAT DAY AND I PROMISE YOU I
DIDN'T GO. CHECK THE F HOUSE LOG
AND SEE I NEVER LEFT MY CELL
AT ALL. TALK TO THE F HOUSE
2 GALLERY OFFICER ON MAY 15th
OR WHATEVER DATE THEY MADE
UP AND HE WILL ATTEST TO IT.
AND THE F HOUSE LT. IF THEY
SAY MAY 15TH IT WILL SHOW
NOBODY WENT TO THE ADJUSTMENT
COMMITTEE THAT DAY AND THE
COMMITTEE NEVER CAME TO F HOUSE.
THIS IS FORGERY WHAT THEY
ARE DOING, COMPLETELY ILLEGAL.
IT WILL BE EXPOSED THEY ARE
JUST SCREWING UP MORE

AND MORE, AS SOON AS I GET A SUMMARY FOR THE MAY 2ND TICKET SAYING I WENT TO THE ADJUSTMENT COMMITTEE. I'M WRITING INVESTIGATOR LARRY SIMS, DEPUTY DIRECTOR ROBERTA FEWS, AND THE INSPECTOR GENERAL, AND MY FAMILY WILL ALSO. INTERNAL AFFAIRS TRIED TO SET ME UP AND IT BACKFIRED. AND NOW THE ADJUSTMENT COMMITTEE IS TRYING TO DO THE SAME THING. EVERYTHING I WRITE IN THIS LETTER IS TRUE PLEASE INVESTIGATE THIS. YOU HAVE MY GRIEVANCE ON THE MAY 2ND TICKET PLEASE USE ALL THIS INFO AND LET ME OUT OF SEG. PLEASE !!! BE FAIR. I'VE BEEN IN SEG FOR 70 DAYS & . WITHOUT DUE PROCESS. PLEASE MAKE THEM FOLLOW THEIR OWN RULES LIKE INMATES HAVE TO. PLEASE INVESTIGATE THIS FAIRLY AND LET ME OUT OF SEG. THANK YOU   B. Jones    BRIAN JONES #K56957

PLEASE COPY THIS LETTER AND SEND ME A COPY I'M DOCUMENTING EVERYTHING

*TF OK 5/1/07*

**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker, Jr.**
Director

Stateville Correctional Center / Rt. 53 / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607 / TDD: (800) 526-0844

# M E M O R A N D U M

DATE: 7-27-07

**RECEIVED**
AUG -8 2007
OFFICE OF
INMATE ISSUES

TO: Jones - K56957

FROM:     A. Workman, Corr. Couns. II
          Grievance Office

SUBJECT:  **ATTACHED GRIEVANCE -**

The attached grievance is being returned for the following reason:

_____ It needs to be rewritten and submitted to your counselor on the attached Committed
Person's Grievance Report.

_____ It was not filed within 60 days of discovery of the incident, occurrence, or
problem which gives rise to the grievance as required in DR 504F, Grievance
Procedures for Committed Persons.

_____ Issue needs to be discussed with your counselor for possible resolution.

_____ No issue outlined in grievance.

_____ It appears that no attempt has been made to resolve the issue as required by DR
504F.

_____ Issue is currently being reviewed by _____

_____ Issue previously addressed. No justification for further action.

__X__ Forward to Administrative Review Board — *I highlighted the address*

__X__ Other: *Send the grievance with our response to them.*
*Attach this ~~letter~~ letter and grievance*
*you wrote with it if you need to.*

JT:aw

cc:     file



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Stateville Correctional Center / Rt. 53 / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607 / TDD: (800) 526-0844

# M E M O R A N D U M

DATE:          September 29, 2007

TO:            Sherri Benton, Administrative Review Board
               Office of Inmate Issues

FROM:          Terry L. McCann, Warden          *Terry L. McCann db*
               Stateville Correctional Center

SUBJECT:       **Brian Jones K56957**

        Enclosed please find the Adjustment Committee Summary for the above referenced offender which was amended per your direction, to amend the charges to expunge all charges from Offender Jones' K56957 record.

        Please advise if further action is necessary.


xc:     Grievance Officer
        ARB File

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** JONES, BRIAN | **IDOC Number:** K56957 | | **Race:** BLK |
| **Hearing Date/Time:** 5/9/2007 10:12 AM | **Living Unit:** STA-F-02-39 | | **Orientation Status:** N/A |
| **Incident Number:** 200700843/2 - STA | **Status:** Final | | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 5/1/2007 | 200700843/1-STA | RODRIQUEZ, SALVADOR | F HOUSE | 07:50 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 203 | Drugs & Drug Paraphernalia | Guilty |
| | *Comments:TESTED POSITIVE FOR THC* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| **No Witness Requested** | | | |

## RECORD OF PROCEEDINGS
Inmate present, hearing conducted. Inmate Jones stated that he submitted to a test on 05/02/2007, and stated he gave a urine sample. Inmate Jones stated that he does not use drugs and he is not taking any medication.

## BASIS FOR DECISION
Inmate Jones admitted to being drug tested on 05/02/2007 as stated in the report. The reporting officer indicated in the report that inmate Jones was drug tested on 05/02/2007 using proper IDOC protocol and yielded a positive result for the ingestion of THC. The attached DC1182 shows that inmate Jones was drug tested at 7:50 a.m. on 05/02/2007 and tested positive for the use of THC. ISI-2 A. Kajtsa was listed as a witness to the administering of said drug test.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 6 Months C Grade | 6 Months C Grade |
| 6 Months Segregation | 6 Months Segregation |
| Revoke GCC or SGT 6 Months | Revoke GCC or SGT 6 Months |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| **Basis for Discipline:**nature of incident. | |

## Signatures
**Hearing Committee**

| | Signature | Date | Race |
|---|---|---|---|
| JOHNSON, DARRYL L - Chair Person | | 05/09/07 | BLK |
| BRIICK, LOUIS E | | 05/09/07 | WHI |

Recommended Action Approved

**Final Comments:** N/A

RECEIVED
AUG -8 2007
OFFICE OF
INMATE ISSUES

| MCCANN / TLM 7/17/2007 | Signature | 07/17/07 Date |
|---|---|---|
| Administrative Officer | | |

has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

7/18/07 11:05 via mail
When Served -- Date and Time

to Committed Person

:59

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** JONES, BRIAN | **IDOC Number:** K56957 | | **Race:** BLK |
| **Hearing Date/Time:** 5/9/2007  10:12 AM | **Living Unit:** STA-F-04-12 | | **Orientation Status:** N/A |
| **Incident Number:** 200700843/3 - STA | **Status:** Expunged Final | | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 5/1/2007 | 200700843/1-STA | RODRIQUEZ, SALVADOR | F HOUSE | 07:50 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 203 | Drugs & Drug Paraphernalia<br>*Comments:TESTED POSITIVE FOR THC* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| No Witness Requested | | | |

## RECORD OF PROCEEDINGS
Inmate present, hearing conducted. Inmate Jones stated that he submitted to a test on 05/02/2007, and stated he gave a urine sample.  Inmate Jones stated that he does not use drugs and he is not taking any medication.

## BASIS FOR DECISION
Inmate Jones admitted to being drug tested on 05/02/2007 as stated in the report.  The reporting officer indicated in the report that inmate Jones was drug tested on 05/02/2007 using proper IDOC protocol and yielded a positive result for the ingestion of THC.  The attached DC1182 shows that inmate Jones was drug tested at 7:50 a.m. on 05/02/2007 and tested positive for the use of THC.  ISI-2 A. Kajtsa was listed as a witness to the administering of said drug test.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | ---- E X P U N G E D ---- |

**Basis for Discipline:**

## Signatures
### Hearing Committee

| | | | | |
|---|---|---|---|---|
| JOHNSON, DARRYL L - Chair Person | *Signature* | 05/09/07 | | BLK |
| BRIICK, LOUIS E | *Signature* | **Date** 05/09/07 | | **Race** WHI |
| Recommended Action Approved | | Date | | Race |

**Final Comments:** N/A

| | | |
|---|---|---|
| TERRY L MCCANN / TLM  9/28/2007 | *Signature* | 09/28/07 |
| **Chief Administrative Officer** | | **Date** |

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

| | | |
|---|---|---|
| *signature* | *signature* | 10/3/07  Via mail  ☐³⁸ |
| **Employee Serving Copy to Committed Person** | | **When Served -- Date and Time** |

in Date: 10/3/2007 15:17:23

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT**

Page ___/___ of

☐ Disciplinary Report ___10-12-07___     ☐ Investigative Report _____
                          Date                                              Date

Committed Person: __JONES BRIAN__  No. __K36957__  Facility: __Stateville CC.__

Observation Date: __10-12-07__ Time: __Approx 1130__ ☐am ☒pm Location: __Stateville F House__

__REGINALD JACKSON__                    __Reginald Jackson 10-12-07 @ 132__
     PRINT Employee's Name                    (Employee's Signature/Date/Time)

Offense: 504 __(C) Disobaying a direct Order.__
              C

Observation: __At the above date and approx time this S0__
__was told to place inmate Maggette (K81218)__
__in the cell with Jones (K36957). Inmate Jones__
__refused to be Housed with Maggette saying that__
__Maggette is a Homosexual. Inmate Jones was__
__escorted to Segregation 217 F House from Cell 412 F.__
__Inmate Jones was given a direct order and he refused.__
Witnesses, if any: __S0 Bethea, S0 Mcdowell Sgt.       I.N by C. Dept of__
                                                     __Identification Card.__

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons: _____

_____          _____
        PRINT Name                    Shift Supervisor's Signature and Date
                                (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comment: _____

_____          _____
        PRINT Name                            Signature/Date

☒ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

__Major attuku__                            __[signature] 10-15-07__
        PRINT Name                          Reviewing Officer's Signature and Date

☒ Reviewed by Hearing Investigator: __A. I. Meier__      __A. I. Meier 10-15-07__
   (Adult Division Major Reports Only)        PRINT Name         Signature and Date

### PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

                                        Committed Person Refused to Sign ☒

__A. I. Meier__          __A. I. Meier__          __10-16-07    839 ☒am ☐pm__
PRINT Serving Employee's Name   Serving Employee's Signature      Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____          _____  Committed Person's Signature and Number

# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** JONES, BRIAN | | **IDOC Number:** K56957 | **Race:** BLK |
| **Hearing Date/Time:** 10/23/2007  11:21 AM | | **Living Unit:** STA-F-02-17 | **Orientation Status:** N/A |
| **Incident Number:** 200701942/1 - STA | | **Status:** Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/12/2007 | 200701942/1-STA | JACKSON, REGINALD H | F HOUSE | 11:30 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 403 | Disobeying A Direct Order | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
Inmate present, hearing conducted. Inmate Jones stated that inmate Maggette came to his cell and told him that he was cute, and stated that Maggette was just coming out of seg for performing sexual acts with another inmate named Jones. Inmate Jones stated that he then told the Sgt. to move him because he did not want to be in the cell with inmate Maggette, and stated that the Sgt told him to stay in the cell with Maggette or go to seg. Inmate Jones stated that he told the Sgt. to take him to seg.

## BASIS FOR DECISION
Inmate Jones admitted to refusing to go into his assigned cell because he did not want to be housed with inmate Maggette. The reporting officer indicated in the report that when he was told to place inmate Jones in the cell with inmate Maggette, inmate Jones refused to go into the cell saying that inmate Maggette is a homosexual. As a result of inmate Jones refusing housing he was escorted to seg. Inmate Jones was identified by his state ID card.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Months C Grade | 1 Months C Grade |
| 1 Months Segregation | 1 Months Segregation |
| Revoke GCC or SGT 1 Months | Revoke GCC or SGT 1 Months |
| Basis for Discipline:nature of incident. | |

## Signatures
### Hearing Committee

| | | | |
|---|---|---|---|
| JOHNSON, CLEO  - Chair Person | *Cleo Johnson* | 10/23/07 | BLK |
| | Signature | Date | Race |
| SHELLEY, CYNTHIA A | *C. Shelley* | 10/23/07 | WHI |
| | Signature | Date | Race |
| Recommended Action Approved | | | |

## Final Comments: N/A

Pharmatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll-free  (858) 635-5843 fax   Internet: www.phamatech.com

When the "RESULT READY" window is completely filled with red color, or is almost completely covered with red color that reaches the top of the window, the test results are ready to interpret.

When red color becomes clearly visible at the bottom of the "RESULT EXPIRED" window, test results should no longer be interpreted and should not be considered as conclusive.

## Interpretation of Test Results



**Negative Test Results For All Drugs Tested**

**Negative** – A negative result is indicated when two (2) colored bands appear, one in the Control Region (C) and one in the Test Region (T), *before* any red color appears at the bottom of the "RESULT EXPIRED" window. This result indicates that the target drug is not present or its concentration is below the detection sensitivity of the test panel. Some negative results may appear in as little as 1 minute, and can be safely interpreted as soon as 2 colored bands are visible.

**Positive Test Results For Amphetamine & THC**

**Positive** – A positive result is indicated when only one (1) colored band appears in the Control Region (C) and no band appears in the Test Region (T), *after* a red spot appears in the "RESULT READY" window. This result indicates that the target drug concentration is at or above the detection sensitivity of the panel. More than one panel may be positive. Potentially positive results can only be reported when a red spot appears in the timer's "RESULT READY" window, and *before* any red color appears at the bottom of the timer's "RESULT EXPIRED" window.

**Invalid Test Results For Cocaine & Opiates**

**Invalid** – A test must be considered invalid if, *after* a red spot appears in the "RESULT READY" window, no bands appear or if a band appears in the Test Region without a Control Band. The presence of a Control Band is necessary to confirm assay performance.



4

Pharmatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll-free  (858) 635-5843 fax   Internet: www.phamatech.com

## Quality Control

An internal procedural control line has been incorporated into the test device to help ensure proper kit performance and reliability. However, the use of external controls is recommended. Positive and negative controls within 25% of the cutoff concentration should produce the expected results. For positive controls, only one (1) colored band will appear in the Control Region (C), and no band will appear in the Test Region (T). For negative controls, two (2) colored bands will appear, one in the Control Region (C) and one in the Test Region (T).

## Limitations of the Procedure

1. It is possible that substances and factors not described in this directional insert may interfere with the test, causing false results (e.g. technical or procedural error).

2. This test has been developed for testing urine samples only. Its performance using other specimens has not been substantiated.

3. Adulterated urine samples may produce erroneous results. Strong oxidizing agents such as bleach (hypochlorite) can oxidize drug analytes. If a sample is suspected of being adulterated, a new sample must be obtained.

4. All preliminary positive results must be confirmed by another method. Gas chromatography/mass spectrometry (GC/MS) is the method of choice to confirm the presence and concentration of a drug in urine.

5. This test is a qualitative screening assay. It is not designed to determine the quantitative concentration of target drugs or the level of intoxication.

6. Because QuickScreen™ is a competitive assay no prozone effect is present.

7. Occasionally, samples containing target drugs below the target drug's cutoff sensitivity for the test may produce a positive result.

## Performance Characteristics

**Sensitivity** – The sensitivity of the QuickScreen™ Pro Multi Drug Screening Test was evaluated on clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent clinical laboratories are reported for overall sensitivity, comparing QuickScreen™ to the Emit II immunoassay-based immunoassay.

**Specificity** – The specificity of the QuickScreen™ Pro Multi Drug Screening Test was evaluated on clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent clinical laboratories are reported, comparing QuickScreen to the Emit II assay.

5

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

tected in urine during the initial several hours, but Benzoylecgonine persists in urine at detectable concentrations for 48 hrs.

**Opiate (OPI 2000)** are addictive, pain-relieving narcotic drugs derived from the opium poppy (*Papaver somniferum*) An opiate is any natural or synthetic drug derived from this plant that has morphine-like pharmacological actions. Natural opiates include Codeine, Morphine and Thebaine. Synthetic opiates include Heroin, Hydrocodone and Levorphanol.

Urine based screening tests for drugs of abuse range from complex analytical procedures to simple immunoassay tests. The sensitivity and rapidity of immunoassays have made them the most accepted method of preliminary screening for drugs of abuse in urine. This allows the laboratory to eliminate the large number of negative specimens and focus on the smaller number of initially positive samples.

## Principle of the Procedure

The QuickScreen™ Cup Multi-Drug Screening Test is a competitive immunoassay that is used to screen for the presence of drugs of abuse in urine. It is a chromatographic absorbent device in which drugs or drug metabolites in a sample compete with drug / protein conjugate immobilized on a porous membrane for a limited number of antibody / dye conjugate binding sites. The test device employs a unique combination of monoclonal and polyclonal antibodies to selectively identify drugs of abuse in urine with a high degree of confidence. The test device also contains a self-timer that indicates when test results are ready to be interpreted.

In the procedure, a fresh urine sample is collected directly into the cup. The urine is absorbed into each test panel by capillary action, mixes with the antibody / dye conjugate, and flows across the pre-coated membrane. **When sample drug levels are below the target cutoff** (the detection sensitivity of the test), antibody / dye conjugate binds to the drug / protein conjugate immobilized in the Test Region (T) of the device. This produces a colored Test Band that, *regardless of its intensity*, indicates a negative result.

**When sample drug levels are at or above the target cutoff**, the free drug in the sample binds to the antibody / dye conjugate, preventing the antibody / dye conjugate from binding to the drug / protein conjugate immobilized in the Test Region (T) of the device. This prevents the development of a distinct colored band, indicating a potentially positive sample.

In either case, a colored Control Band is produced in the Control Region (C) by a non-specific antibody-dye / conjugate reaction. This band serves as a built-in quality control device, demonstrating antibody recognition and reactivity as well as confirming that the test is complete.

## Reagents & Materials Supplied

1. 25 "Self-Timed" Test Cups (Cat. # 9177X). Separate test panels for each target drug contain:
   a. Monoclonal anti-drug antibody / colloidal gold conjugate in a protein matrix containing 0.1% sodium azide coated in the sample path)
   b. Drug derivative / protein conjugate immobilized as a line in the **Test Region (T)**
   c. Goat anti-mouse antibody immobilized as a line in the Control Region (C)
2. Directional Insert (Cat # 9177X-DI)

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(858) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

| Morphine-3-β-D-Glucuronide |
| --- |

[A] A blank space indicates that no cross-reactivity was observed when the compound was tested to 5 µg/mL
[B] A blank space indicates that no cross-reactivity was observed when the compound was tested to 10 µg/mL.

**Interfering Substances** — The following compounds were spiked into normal human urine and tested for interference with the QuickScreen™ Pro Multi Drug Screening Test. Unless otherwise noted, these compounds were tested to 100 µg/mL with no interference observed.

Acetaminophen • Acetone • N-Acetylprocainamide • Acetylsalicylic Acid (Aspirin) • Albumin • Alphenal • Alprazolam[C] • Amantadine • (+)-Amethopterin • Amikacin • dl-Aminoglutethimide • Aminophylline Amitriptyline • Amobarbital • Amoxicillin • Ampicillin • Apomorphine • Aprobarbital • (−)-Arterenol l-Ascorbic Acid (Vitamin C) • Aspartame • d-Aspartic Acid • dl-Aspartic Acid • l-Aspartic Acid • Atropine • Barbital • Barbituric Acid • Benzoic Acid • Benzphetamine • Benzoylene Sulfonate • Bilirubin • Bromazepam • Bromocriptine Mesylate • (+)-Brompheniramine • Butabarbital • Butalbital • Butethal • Caffeine • Cannabidiol • Cannabinol • Carbamazepine • Cephalexin • Chloramphenicol Chlordiazepoxide • Chloroquine • (+)-Chlorpheniramine • (±)-Chlorpheniramine • Chlorpromazine Chlorpropamide •

Interfering Substances, continued

Chlorprothixene • Cimetidine • Clemastine • Clomipramine • Clonazepam • Clonidine • (−)-Cotinine • Creatinine • Cyclizine • Cyclobenzaprine • Cyclosporin A • Cyproheptadine • (+)-Deoxyephedrine • Desipramine • Desmethyldiazepam • Dextromethorphan • 5,5-Diallylbarbituric Acid • Diazepam • Diflunisal • Digoxin • 4-Dimethylaminoantipyrene • Diphenhydramine • Diphenoxylate • 5,5-Diphenylhydantoin Disopyramide • Doxepin • Doxylamine • (±)-Ephedrine • (+)-β-Ephedrine • (−)-β-Ephedrine • (±)-Epinephrine • (−)-Ephedrine • (±)-Epinephrine • (−)-Epinephrine • Erythromycin • Estriol • Estrone-3-Sulfate • Ethanol • Ethosuximide • Ethyl-p-Aminobenzoate • Ethylenediaminetetraacetic Acid • Fenfluramine • Fenoprofen • Fentanyl[B] • Flunitrazepam • Flurazepam • Furosemide • Gentamicin • Gentisic Acid • Glucose • dl-Glutethimide • Griseofulvin • Guanacol Glyceryl Ester • Hexobarbital • Human Hemoglobin • Hydrochlorothiazide • α-Hydroxyhippuric Acid • 5-Hydroxyindole-3-Acetic Acid • 5-Hydroxyindole-2-Carboxylic Acid • Hydroxyzine • Ibuprofen • Imipramine • Indole-3-Acetic Acid • Indole-3-Butyric Acid • Indomethacin • (+)-Isoproterenol • (±)-Isoproterenol • (−)-Isoproterenol • Isoxsuprine • Kanamycin • Ketamine • Ketoprofen • Labetalol • Levorphanol • Lidocaine • Lithium Carbonate • (±)-Lorazepam • Lormetazepam • Lysergic Acid Diethylamide (LSD)[B] • Meclizepam • Melanin • Meperidine • Meprobamate • Mescaline • dl-Metanephrine • (±)-Methadone • (−)-Methamphetamine • Methaqualone • (S)-5-Methoxy-α-Methyl-β-Naphthaleneacetic Acid • 2-Methyl-3-(3,4-Dihydroxyphenyl)-dl-Alanine • 2-Methyl-3,4-Dihydroxyphenyl-l-Alanine • (±)-3,4-Methylenedioxymeth-amphetamine • Methylphenidate • Methyprylon • (±)-Metoprolol • Mexiletin • Nalorphine • Naltrexone • Naphazoline • α-Naphthaleacetic Acid • β-Naphthaleacetic Acid • Naproxen • Nefiritin • Niacinamide • Nialamide • Nicotinamide • Nicotinic Acid • Nifedipine • Nitrazepam • Nomifensine • Noracetadone • Norethindrone • Norfloxacin • Normorphine • Nortriptyline • Noscapine • Nylidrin • Orphenadrine • Oxalic Acid • Oxazepam • Oxycodone • Oxymetazoline • Papaverine • Penicillin-G • Pentazocine • Pentobarbital • Phenacetin • Phenanthroline • Phenobarbital • Phenothiazine • Phenylalanine • Phentolamine • (±)-Propylhexedrine • d-Phenylalanine • trans-2-Phenylcyclopropylamine • Phenylephrine • (±)-Phenylpropanolamine • Piroxicam • Potassium Chloride • Prazepam • Prednisolone • Primidone • Procainamide • Prochlorperazine • Promazine • Promethazine • (+)-Propoxyphene • 2-Propylpentanoic Acid • Propylthio • Protriptyline • Quinidine • Quinine • Ranitidine • Riboflavin • Salicylic Acid • (+)-Scopolamine • Secobarbital • Sodium Chloride • Sulindac • Temazepam • Terbutaline • Tetracycline • Tetrahydrothi-

Pharmatech, Inc., 9530 Padgett Street, Suite 101    San Diego, CA 92126 USA
(888) 635-5840 Toll- free  (858) 635-5843 fax.    Internet: www.pharmatech.com

**Accuracy** – The accuracy of the QuickScreen™ Pro Multi Drug Screening Test was evaluated on clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent laboratories are reported, comparing Quick-Screen to the Emit II assay.

| Analyte | In-House Study, % Agreement | | | | | Clinical Study, % Agreement | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | PCP | AMP | THC | COC | OPI | PCP | AMP | THC | COC | OPI |
| n = | 167 | 189 | 143 | 164 | 176 | 140 | 124 | 102 | 143 | 151 |
| Sensitivity | 99 | 97.6 | 99 | 100 | >99 | 95 | 98.8 | 98 | 100 | >99 |
| Specificity | 99 | 100 | 99 | 95.9 | >99 | 98.8 | 100 | 99 | 87.5[a] | >99 |
| Accuracy | >99 | 99.4 | 98 | 98.1 | >99 | 97.9 | 99.2 | >98 | 96.5 | >99 |

[a] Five discrepant results were observed in the Cocaine Clinical Study. The samples were from 3 to 10% below the assay cutoff concentration (221 to 293 ng/mL) and subsequently tested positive by GCMS.

**Precision** – Eight urine pools, ranging in concentration from 0 to 200% of cutoff, were assayed twice a day for 20 days. The results were interpreted individually by two technicians. The inter- and intra-assay coefficients of variation were determined to be less than 2%.

**Cross-Reactivity** – The following structurally related compounds were spiked into normal human urine and found to cross-react in the QuickScreen Pro Multi Drug Screening Test. The results, in µg/mL, are expressed as that amount of compound capable of giving a result equivalent to the target drug at the cut-off concentration. Unless otherwise noted, a blank space indicates no interference was observed when the compound was tested to 100 µg/mL.

| Compound | PCP | AMP | THC | COC | OPI |
|---|---|---|---|---|---|
| 2-Ethylidene-1,5-Dimethyl-3,3-Diphenylpyrrolidine (EDDP) | 25 | | | | |
| Phencyclidine | 0.025 | | | | |
| d-Amphetamine | | 1 | | | |
| dl-Amphetamine  •  3-Hydroxytyramine  •  (±)-α-Phenylethylamine | | 10 | | | |
| l-Amphetamine  •  Mephentermine  •  (R)-(+)-α-Phenylethylamine | | 10 | | | |
| (+)-3,4-Methylenedioxyamphetamine | | 100 | | | |
| β-Phenylethylamine | | 4.5 | | | |
| Tyramine | | 10 | | | |
| 11-Hydroxy-Δ8-THC[a] | | | 12.5 | | |
| 11-Nor-Δ8-THC-2-Carboxylic Acid[a] | | | 1 | | |
| 11-Nor-Δ9-THC-2-Carboxylic Acid[a]  •  Δ9-Tetrahydrocannabinol | | | 0.1 | | |
| Δ8-Tetrahydrocannabinol | | | 0.05 | | |
| Benzoylecgonine  •  Cocaine | | | | 100 | |
| Metoclopramide | | | | 0.3 | |
| Procaine  •  Pyrilamine | | | | 25 | |
| 6-Acetylmorphine  •  Hydromorphone | | | | | 10 |
| Codeine | | | | | 1 |
| Ethylmorphine[a]  •  Morphine  •  Nalorphine | | | | | 2 |
| Heroin[a]  •  Hydrocodone | | | | | 2.5 |

Pharmatech, Inc., 9530 Padgett Street, Suite 101    San Diego, CA 92126 USA
(888) 635-5840 Toll- free  (858) 635-5843 fax.    Internet: www.pharmatech.com

## Warnings & Precautions

1. FOR PROFESSIONAL, *IN VITRO* DIAGNOSTIC USE ONLY.
2. This method is established using urine only. No other fluid has been evaluated. Urine has the potential to be infectious. Follow Universal Precautions for proper handling and disposal methods.
3. Do not reuse this kit beyond its expiration date. Do not reuse the Test Device.

## Storage & Handling Requirements

Store at room temperature (15 – 28 °C). Do not freeze. Refer to expiration date for stability.

## Sample Collection & Preparation

A fresh urine sample should be collected in the cup device immediately prior to testing. The urine should be collected to the recommended volume indicated by the "FILL TO HERE" mark on the outside of the cup. Examine the temperature strip within 1 minute after collecting the specimen. The temperature should be between 90 and 100 °F. Samples outside this range may have been adulterated.

## Assay Procedure

**Preparation**

1. Confirm that the cup device is at room temperature (15 – 28 °C) before testing.
2. Do not break the seal on the lid until you are ready to perform the test.

**Testing**

1. Open the foil pouch, remove the test device, remove the cap from the test device and discard the desiccant packets.
2. Have the donor collect his or her urine specimen in the cup that is at recommended volume. Make sure that the urine level is at least at the "FILL TO HERE" mark printed on the front of the cup.
3. Read the test results when indicated (see When to Read Test Results Using the "Timer".)

## When to Read Test Results Using the "Timer"



tected in urine during the initial several hours, but Benzoylecgonine persists in urine at detectable concentrations for 48 hrs.

**Opiates (OPI 2000)** are addictive, pain-relieving narcotic drugs derived from the opium poppy (*Papaver somniferum*). An opiate is any natural or synthetic drug derived from this plant that has morphine-like pharmacological actions. Natural opiates include Codeine, Morphine and Thebaine. Synthetic opiates include Heroin, Hydrocodone and Levorphanol.

Urine based screening tests for drugs of abuse range from complex analytical procedures to simple immunoassay tests. The sensitivity and rapidly of immunoassays have made them the most accepted method of preliminary screening for drugs of abuse in urine. This allows the laboratory to eliminate the large number of negative specimens and focus on the smaller number of initially positive samples.

## Principle of the Procedure

The QuickScreen Cup Multi-Drug Screening Test is a competitive immunoassay that is used to screen for the presence of drugs of abuse in urine. It is a chromatographic absorbent device in which drugs or drug metabolites in a sample compete with drug / protein conjugate immobilized on a porous membrane for a limited number of antibody / dye conjugate binding sites. The test device employs a unique combination of monoclonal and polyclonal antibodies to selectively identify drugs of abuse in urine with a high degree of confidence. The test device also contains a self-timer that indicates when test results are ready to be interpreted.

In the procedure, a fresh urine sample is collected directly into the cup. The urine is absorbed into each test pad by capillary action, mixes with the antibody / dye conjugate, and flows across the pre-coated membrane. **When sample drug levels are below the target cutoff** (the detection sensitivity of the test), antibody / dye conjugate binds to the drug / protein conjugate immobilized in the Test Region (T) of the device. This produces a colored Test Band that, *regardless of its intensity*, indicates a negative result.

**When sample drug levels are at or above the target cutoff**, the free drug binds to the antibody / dye conjugate, preventing the antibody / dye conjugate from binding to the drug / protein conjugate immobilized in the Test Region (T) of the device. This prevents the development of a distinct colored band, indicating a potentially positive sample.

In either case, a colored Control Band is produced in the Control Region (C) by a non-specific antibody-dye / conjugate reaction. This band serves as a built-in quality control device, demonstrating antibody recognition and reactivity as well as confirming that the test is complete.

## Reagents & Materials Supplied

1. 25 "Self-Timed" Test Cups (Cat. # 9177X). Separate test panels for each target drug contain:
   a. Monoclonal anti-drug antibody / colloidal gold conjugate in a protein matrix containing 0.1% sodium azide coated in the sample path
   b. Drug derivative / protein conjugate immobilized as a line in the Test Region (T)
   c. Goat anti-mouse antibody immobilized as a line in the Control Region (C)
2. Directional Insert (Cat. # 9177X-DI)

---

Phamatech, Inc. 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll-free  (858) 635-5843 fax   Internet: www.phamatech.com

| | |
|---|---|
| Morphine-3-β-D-Glucuronide | 5 |

[a] A blank space indicates that no cross-reactivity was observed when the compound was tested to 5 µg/ml.

[b] A blank space indicates that no cross-reactivity was observed when the compound was tested to 10 µg/ml.

**Interfering Substances** – The following compounds were spiked into normal human urine and tested for interference with the QuickScreen Pro Multi Drug Screening Test. Unless otherwise noted, these compounds were tested to 100 µg/ml, with no interference observed.

Acetaminophen • Acetone • N-Acetylprocainamide • Acetylsalicylic Acid (Aspirin) • Albumin • Alphenal • Alprazolam[b] • Amantadine • (+)-Amethopterin • Amikacin • g-B-Aminobutanoic acid • Aminopyrine • Amitriptyline • Amobarbital • Amoxicillin • Ampicillin • Apomorphine • Aprobarbital • (+)-Arecoid • Ascorbic Acid (Vitamin C) • Aspartame • d-Aspartic Acid • dl-Aspartic Acid • l-Aspartic Acid • Atropine • Barbital • Barbituric Acid • Benzoic Acid • Benzphetamine • Benzoylecgonine Methane Sulfonate • Bilirubin • Bromazepam • Bromocriptine Mesylate • (+)-Brompheniramine • Butabarbital • Brethine • Buspin • Caffeine • Cannabidiol • Cannabinol • Carbamazepine • Cephalexin • Chloramphenicol • Chlordiazepoxide • Chloroquine • (+)-Chlorpheniramine • (±)-Chlorpheniramine • Chlorpromazine • Chlorpropamide •

---

Phamatech, Inc. 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll-free  (858) 635-5843 fax   Internet: www.phamatech.com

**Interfering Substances, continued**

Chlorothiazone • Cimetidine • Clonazepam • Clidinine • (–)-Cotinine • Creatinine • Cyclizine • Cyclobenzaprine • Cyclosporin A • Cyproheptadine • (+)-Deoxyephedrine • Desipramine • Dextromethorphan • Dextrorphan • S-(Diallyl)barbituric Acid • Diazepam • Diflunisal • Digoxin • 4-Dimethylaminoantipyrine • Diethylmaleamate • Diphenoxylate • 3,5-Diphenylhydantoin • Disopyramide • Doxepin • Doxylamine • (+)-Ephedrine • (±)-Ephedrine • (±)-Ephedrine • (–)-Ephedrine • (–)-Epinephrine • Erythromycin • Estriol • Estrone-3-Sulfate • Ethanol • Ethosuximide • Ethyl-p-Aminobenzoate • Ethylenediaminetetraacetic Acid • Fenflu-ramine • Fenoprofen • Fentanyl[b] • Flunitrazepam • Flurazepam • Furosemide • Gentamicin • Gentisic Acid • Glucose • d-Glucuronide • Griseofulvin • Guaiacol Glyceryl Ester • Hexobarbital • Human He-moglobin • Hydrochlorothiazide • o-Hydroxyhippuric Acid • 5-Hydroxyindole-3-Acetic Acid • 5-Hydroxyindole-2-Carboxylic Acid • Hydroxyzine • Ibuprofen • Imipramine • Indole-3-Acetic Acid • In-dole-3-Butyric Acid • Indomethacin • (±)-Isoproterenol • (±)-Isoproterenol • Isoxsu-prine • Kanamycin • Ketamine • Ketoprofen • Labetalol • Levorphanol • Lidocaine • Lithium Carbon-ate • (±)-Lorazepam • Lormetazepam • Lysergic Acid Diethylamide (LSD)[b] • Medazepam • Melanin • Meperidine • Meprobamate • Mescaline • dl-Methadone • (–)-Methadone • (+)-Methamphetamine • Methaqualone • (S)-α-Methoxy-α-Methyl-2-Naphthaleneacetic Acid • 2-Methyl-3,3,4-Dihydroxyphenyl-dl-Alanine • 2-Methyl-3-(3,4-Dihydroxyphenyl)-Alanine • (±)-3,4-Methylenedioxymeth-amphetamine • α-Naphthaleneacetic Acid • β-Naphthaleneacetic Acid • Naproxen • Nefiracin • Niacinamide • Niala-mide • Nicotinic Acid • Nifedipine • Nitrazepam • Nomifensine • Norcodeine • Nordoxepin[b] • Norethindrone • Normorphine[b] • Nortriptyline • Noscapine • Ofloxin • Orphenadrine • Oxalic Acid • Oxazepam • Oxycodone • Oxymetazoline • Papaverine • Penicillin G • Pentazocine • Pentobarbital • Phenelzine • Phencyclidine • Phenobarbital • Phenolphthalein • Phentermine • l-Phenylacetone • l-Phenylalanine • Phenylbutazone • Phenylephrine • l-Phenylephrine • (±)-Phenylpropanolamine • Prazosin • Potassium Chloride • Diazepam • Prednisolone • Prednisone • Pro-cainamide • Procaine • Promazine • Promethazine • Promethazine • (+)-Propoxyphene • 2-Propylpentanoic Acid • Pro-triptyline • Quinidine • Quinine • Ranitidine • Riboflavin • Salicylic Acid • (–)-Scopolamine • Secobarbital • Sodium Chloride • Sulindac • Temazepam • Terbutaline • Tetracycline • Tetrahydro-thi-

request from GO.

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

| Date: 7-11-07 | Committed Person (Please Print) BRIAN JONES | ID#: K56957 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [x] Other (spec.) COUNSELOR MIS CONDUCT

- [ ] Disciplinary Report: ____/____/____
      Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** IM FORWARDING THIS GRIEVANCE STRAIGHT TO THE GRIEVANCE OFFICER BECAUSE ITS PERTAINING TO MY COUNSELOR EDWARD BUTKIEWITZ, I GAVE THIS MAN MY DISCIPLINARY REPORTS ON 6-21-07 TO SEE WHY I BEEN IN SEG SINCE MAY 2 2007 AND RECEIVED A DISCIPLINARY REPORT ON MAY 14 2007 BUT HAVE NEVER BEEN TO THE ADJUSTMENT COMMITTEE. THIS MAN TO THIS DATE JUL 11 2007 HAS

**Relief Requested:** FOR COUNSELOR EDWARD BUTKIEWITZ TO SEND ME ALL 3 OF MY DISCIPLINARY REPORTS.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_B. Jones_                    K56957        7, 11, 07
Committed Person's Signature        ID#           Date

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** |
|---|

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

| **EMERGENCY REVIEW** |
|---|

RECEIVED
JUL 31 2007
OFFICE OF
INMATE ISSUES

Date Received: ____/____/____

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____          ____/____/____
Chief Administrative Officer's Signature        Date

Distribution: Master File; Committed Person          Page 1          DOC #

ILLINOIS DEPARTMENT OF CORRECTIONS
COMMITTED PERSON'S GRIEVANCE (Continued)

NOT TOLD ME ANYTHING AND I SEND LETTER AFTER LETTER TELLING HIM TO SEND MY DISCIPLINARY REPORTS. HE HAS 3 TICKETS OF MINE ONE FOR A CONTRABAND WHICH WAS EXPUNGED, ONE FOR A BOGUS DRUG TEST THAT NEVER HAPPENED AND I GOT A SUMMARY BACK SAYING CONTINUED AS OF 6-26-07 EVEN THOUGH I HAD A HEARING FOR IT 5-9-07 I RECEIVED BOTH OF THOSE TICKETS 5-3-07. AND HE ALSO HAS A TICKET FOR ANOTHER FABRICATED DRUG TEST I RECEIVED 5-14-07. ALL THESE DATES ARE IMPORTANT. I TRULY BELIEVE INTERNAL AFFAIRS, THE ADJUSTMENT COMMITTEE, AND COUNSELOR BUTKIEWICZ ARE TRYING TO ALTER MY TICKETS SINCE I TRUSTED MY COUNSELOR AND GAVE HIM MY COPIES. BUT BEFORE I GAVE HIM THE TICKETS DEPUTY DIRECTOR ROBERTA FEWS SENT AN INVESTIGATOR TO TALK TO ME ABOUT INTERNAL AFFAIRS HARRASSING & THREATENING ME AND THE BOGUS FABRICATED TICKETS THEY WROTE. THE INVESTIGATOR FROM SPRINGFIELD WROTE DOWN THE DATES I RECEIVED MY TICKETS AND DOCUMENTED THEM SO IF COUNSELOR BUTKIEWITZ DOESN'T SEND MY TICKETS BACK THE SAME WAY IT WILL BE EXPOSED. I HAVE SEVERAL GRIEVANCES PENDING ABOUT THESE REPORTS SO MY COPIES ARE ESSENTIAL TO ME.



TO: GRIEVANCE
OFFICER
GARCIA
9-10-07

I have not forgot. I am currently working on your situation. I will contact you by Monday with an ~~spdat~~ Update.

T. Garcia

BRIAN
JONES #KS1695

COUNSELOR GARCIA.

PLEASE READ THIS LETTER AND BE FAIR.
BECAUSE WHEN I TALKED TO you
AND you TOLD ME you WERE A
FAIR PERSON I BELIEVED you. IF
POSSIBLE PLEASE TAKE 10 minutes
OUT OF your Busy SCHEDULE TO
COME TALK TO ME ABOUT THIS
LETTER. BECAUSE WHEN you SEND
ME THINGS IN THE MAIL IT
TAKES A WEEK TO REACH ME.

P.S. IVE LOST
25 lbs. HAVN'T SEEN
my KIDS OR TALKED
TO THEM IN ALMOST
3 months. FOR A
LIE. PLEASE BE
FAIR.

THANK
you.

B Jones

BRIAN
JONES
#K56457

G.O. GARCIA,

GREETINGS, WE HAD A CONVERSATION
ALMOST 2 WEEKS AGO. AND YOU
ASSURED ME THAT YOU WOULD
LOOK OVER MY GRIEVANCE AGAIN
AND IF YOU COULD PROVE THAT
I NEVER HAD A HEARING FOR THE
MAY 2ND TICKET YOU WOULD HELP
ME. YOU ALSO SAID YOU WOULD
SEND ME THE INFO FOR THE
HEAD OF THE A.R.B. AND YOU
WOULD TRY TO ASCERTAIN IF
THE A.R.B. RECEIVED MY MAIL.
WELL AS YOU CAN SEE I ONLY
WENT TO THE ADJUSTMENT
COMMITTEE ONCE ON MAY 9TH 2007
FOR THE MAY 1ST TICKET. ON
MY SUMMARY THE TICKET NUMBER
SAYS FOR THE MAY 1ST TICKET
ONLY. AND IT HAS ALREADY
BEEN PROVEN THAT I NEVER TOOK A
TEST ON MAY 1ST. SO NOT ONLY
DID THEY GIVE ME THE
TICKET FOR THE MAY 2ND TICKET
ON MAY 14TH WHICH WAS

12 DAYS AFTER THE ALLEGE
OFFENSE SO THATS BOGUS. But
THEN THEY ADMIT I NEVER BEEN
TO THE ADJUSTMENT COMMITTEE.
SO THE PROOF IS RIGHT THERE.
YOU LOOKED ME IN MY EYES AND
SAID YOU WERE A FAIR PERSON THAT
WOULD HELP ME IF YOU CAN PROVE
IT WAS BOGUS. EVEN COUNSELOR WORKMAN
RESPONDED TO MY GRIEVANCE
SAYING I'M GUILTY OF THE MAY 1ST
TICKET BECAUSE THEY SENT ME THE
MAY 2ND TICKET AND I DON'T HAVE TO
GO TO THE ADJUSTMENT COMMITTEE.
HOW IN THE WORLD AM I GUILTY OF A
MAY 2ND INCIDENT ON A TICKET
FOR A MAY 1ST INCIDENT, ON THE
THE TICKET IT CLEARLY STATES. ALL
CHARGES MUST BE SUBSTANTIATED. AND
THEY PROVE I TOOK AND FAIL A TEST ON
MAY 1ST? OF COURSE THEY DIDN'T.
I NEVER TOOK A TEST MAY 1ST AND
I NEVER BEEN TO THE ADJUSTMENT
COMMITTEE FOR THE MAY 2ND TICKET WHICH
I DIDN'T RECEIVE UNTIL MAY 14TH.
THERE IS THE PROOF RIGHT THERE.   THANK YOU

Blme

ILLINOIS DEPARTMENT OF CORRECTIONS

## COMMITTED PERSON'S GRIEVANCE

Date: 7-26-07   Committed Person (Please Print): BRIAN JONES   ID#: K56957

Present Facility: STATEVILLE C.C.   Facility where grievance issue occurred: STATEVILLE C.C.

NATURE OF GRIEVANCE:

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ Disability
☐ Staff Conduct   ☐ Dietary   ☐ Medical Treatment   ☐ Other (specify) _____
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report: 5  2  07   STATEVILLE C.C.
                         Date of Report          Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

Brief Summary of Grievance: I JUST RECEIVED A SUMMARY FOR
A TICKET I DIDN'T RECEIVE UNTIL 5-14-07.
BUT I WAS FOUND GUILTY BY THE HEARING
BOARD 5-9-07. IN THE RULE BOOK IF A TICKET
HAS TO BE CORRECTED AN INMATE STILL HAS
THE RIGHT TO GO IN FRONT OF THE ADJUSTMENT
COMMITTEE TO DEFEND HISSELF. I HEARD A
TICKET ON MAY 9TH FOR AN ALLEGE
OFFENSE THAT HAPPENED MAY 1ST IT WAS
DETERMINED THAT I NEVER TOOK A TEST

Relief Requested: THAT THE MARIJUANA CORRECTED TICKET BE
NULL & VOID BECAUSE I NEVER WENT TO THE
ADJUSTMENT COMMITTEE. AND I BE LET OUT OF SEG.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

B. [signature]   K56957   7, 26, 07
Committed Person's Signature      ID#      Date

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

Date Received: ___/___/___   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: _____

Print Counselor's Name _____   Counselor's Signature _____   Date of Response _____

### EMERGENCY REVIEW

RECEIVED
AUG - 8 2007
OFFICE OF INMATE ISSUES

Date _____

Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____   Date _____

Distribution: Master File; Committed Person   Page 1   DOC 0046 (Eff. 10/2001)
Replaces DC 5657

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

ON MAY 1ST, I RECEIVED ANOTHER TICKET MAY 14th FOR AN OFFENSE THAT HAPPENED MAY 2ND I WAS TOLD THIS IS THE CORRECT TICKET WELL AS YOU CAN ASCERTAIN I HAVN'T BEEN TO THE ADJUSTMENT COMMITTEE FOR THIS TICKET. ALL INMATES MUST RECEIVE THE CORRECTED TICKET BEFORE THEY GO TO THE COMMITTEE HOW IN MY MASTER FILE CAN I BE FOUND GUILTY OF A TICKET MAY 9th AND I DIDN'T RECEIVE IT UNTIL MAY 14th. IN THE RULE BOOK THERE IS NO DOUBT OR CONTRADICTION INMATES HAVE A RIGHT TO GO IN FRONT OF THE COMMITTEE FOR CORRECTED TICKETS. NOT JUST A RIGHT BUT ITS LAW AND I NEVER WENT TO THE COMMITTEE FOR THE CORRECTED TICKET. HOW AM I GUILTY MAY 9th AND DIDN'T GET THE TICKET UNTIL MAY 14th. THEY HAD TO DO WAS CALL ME IN FRONT OF THE COMMITTEE FOR THE MAY 2ND TICKET WHICH THEY DIDN'T DO.

ALL INMATES

GOES IN FRONT OF THE

ADJUSTMENT COMMITTEE

FOR CORRECTED TICKETS

ITS IN THE RULE BOOK!



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

December 8, 2006

Mr. Brian Jones
K56957
Menard Correctional Center
PO Box 711
Menard, IL  62259

Dear Mr. Jones:

Your correspondence regarding your safety at Menard Correctional Center has been forwarded to my office for handling.

Your allegations of staff harassment at Menard Correctional Center have been referred to an investigator with the Illinois Department of Corrections.  I assure you all necessary means will be used to make sure this matter is looked into entirely.

IDOC staff are required to follow a strict policy of conduct, and this policy is reviewed annually.  Any proven violation of this policy results in appropriate disciplinary action.

I trust this is responsive to your concerns.

Sincerely,

Donald A. Hulick
Warden

DAH:jae

cc:    Master File

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Report**
STATEVILLE
Facility

Date: 1 MAY/07

**Type of Report:**
☒ Disciplinary
☐ Investigative

**Offender Information:**
Offender Name: JONES, BRIAN       ID #: K51095

**Offense Information:**
Observation Date: 1 MAY/07       Approximate Time: 730    ☐ a.m. ☒ p.m.
Location: LT. OFFICE

**Offense(s): DR 504:** 203 Drugs and drug paraphernalia

**Summary of facts supporting violation:** (NOTE: Each offense identified above must be substantiated.)

On the above date and approximate time s/o conducted
a urinalysis test of inmate JONES, BRIAN K51095, using
a Rediscreen device. Upon the tested sample
for THCAN and opiad and opiate, internal inspector
Vierten checked the result of the test, the test
indicated a positive reaction for THC. All procedure
was followed AND a guilty form is submitted for
this Offender disciplinary report. EOR

**Witness(es):**

| Witness Name | Witness ID | Witness Type (Staff/Offender/Visitor) |
|---|---|---|
| A.T. Vierten | #2093 | STAFF |
| | | |
| | | |
| | | |

☐ Check if DOC 0318 is attached to describe additional facts, observations or witnesses.

*Do not write below this line.*

------------------------------------------------------

Distribution:  Master File
Offender
Facility (2)

DOC 0317 (Eff. 8/2006)
(Replaces DC 7205)



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

March 19, 2008

Brian Jones
Register No.  K56957
Stateville Correctional Center

Dear Mr. Jones;

This is in response to your grievance received on November 21, 2007, regarding a disciplinary report dated October 12, 2007, which was alleged to have occurred at Stateville Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your written grievance dated November 8, 2007 regarding the above issued disciplinray report and claims that Officer Jackson was not at work on 10/12/07 at 11:30 PM.

The Grievance Officer's report (1424) and subsequent recommendation dated November 14, 2007 and approval by the Chief Administrative Officer on November 14, 2007 have been reviewed.

This office reviewed the disciplinary report written on October 12, 2007 by Officer Jackson citing you for the offense of 403-Disobeying a Direct Order.

The Stateville Adjustment Committee reviewed the report (200701942/1-STA) October 23, 2007 and found you guilty of the charge. Recommended discipline was: Demotion to C grade 1-month, Segregation 1-month and Revoke GCC or SGT 1-month. The Chief Administrative Officer concurred with the recommendation on October 29, 2007.

This office notes that the report reflects it was written at 11:30 AM. However, while the Summary does reflect 11:30 PM, this office is confident that this is a typographical/input error. Additionally, the Summary does reflect that Jones refused to be placed in a cell with Maggette. The report reflects the opposite, that Jones *refused to let Maggette in the cell with him.*

Based on a total review of all available information and a compliance check of the procedural due process safeguards outlined in DR504, this office recommends the grievance be suspended. The Stateville Adjustment Committee is to have the time changed on the Summary and is to change the Summary to appropriately reflect the events as stated in the report. A copy of the amended Summary is to be provided to this office. Upon receipt, this office will finalize this report.

FOR THE BOARD: _Sherry Benton_

Sherry Benton
Administrative Review Board
Office of Inmate Issues

I concur. Warden McCann is to have the Adjustment Committee proceed accordingly.

_Roger E. Walker Jr._

Roger E. Walker Jr.
Director

-b4

cc:    Warden Terry McCann, Stateville Correctional Center
Stateville Adjustment Committee
Brian Jones, Register No. K56957
Tickler File

ILLINOIS DEPARTMENT OF CORRECTIONS
## Offender Disciplinary Report

### Reporting Employee Information:

| Print Name | Badge # | Signature | Date | Time |
|---|---|---|---|---|
| | | | | ☐ a.m. ☐ p.m. |

### Disciplinary Action:

**Shift Review**

☒ Temporary Confinement   ☐ Investigative Status   Reasons: _____

| Printed Name and Badge # | Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer) | Date |
|---|---|---|

**Reviewing Officer's Decision**

☐ Confinement reviewed by Reviewing Officer   Comment: _____

☐ **Major Infraction**, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction**, submitted to Program Unit

| Print Reviewing Officer's Name and Badge # | Reviewing Officer's Signature | Date |
|---|---|---|

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

| Print Hearing Investigator's Name and Badge # | Hearing Investigator's Signature | Date |
|---|---|---|

### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports.

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

| Offender's Signature | ID# |
|---|---|

☐ Check if offender refused to sign

**Serving Employee**

| Print Name | Badge # | Signature |
|---|---|---|
| | | ☐ a.m. ☐ p.m. |

| Date Served | Time Served | |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

| Offender's Signature | ID# |
|---|---|

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
### (Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

| Date of Disciplinary Report | Print offender's name | ID# |
|---|---|---|

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

**Witness Information:**

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |
| | | | |

Distribution:  Master File
Offender
Facility (2)

DOC 0317 (Eff. 8/2008)
(Replaces DC 7205)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Report**

Date: 05/10/07

| Type of Report: | | | | |
|---|---|---|---|---|
| ☒ Disciplinary | ☐ Investigative | Stateville | | |
| | | Facility | | |

Offender Name: JONES, Brian                                   ID #: K56957

Observation Date: 05/02/07    Approximate Time: 750    ☒ a.m. ☐ p.m.   Location: Lieutenant Office

Offense(s): DR 504:    Drugs and Drug paraphernalia

**Observation:** (NOTE: Each offense identified above must be substantiated.) On the above date and approximate time this C/O conducted a urinalysis test of inmate JONES, BRIAN K56957, using a "Quick Screen Five" testing cup. The test started 7:50am and ended at 8:09am. Internal Investigator Kejtea of the Internal Affairs Unit checked the results of the test. The test indicated a positive reaction for THC. All procedures were followed and a DC1182 form is attached to this disciplinary report. EOR

Witness(es): _____

☐ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| | | | | ☐ a.m. ☒ p.m. |
|---|---|---|---|---|
| S. Rodriguez | 6125 | | 5/1/07 | 101 |
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement    ☐ Investigative Status    Reasons: _____

_____                    _____        Date
Printed Name and Badge #                              Shift Supervisor's Signature
                                                      (For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: _____

☐ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ Minor Infraction, submitted to Program Unit

_____                    _____        Date
Print Reviewing Officer's Name and Badge #             Reviewing Officer's Signature

☐ Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only):

_____                    _____        Date
Print Hearing Investigator's Name and Badge #          Hearing Investigator's Signature

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedure Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

_____                                        _____
Offender's Signature                                                   ID#

_____        _____        _____
Serving Employee (Print Name)          Badge #                         Signature
                                                                       ☐ a.m. ☐ p.m.
                    _____        _____
                    Date Served            Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____                    _____
Offender's Signature                                 ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

_____        _____        _____
Date of Disciplinary Report            Print offender's name                  ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| | | | |
|---|---|---|---|
| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |

Witness can testify to: _____

| | | | |
|---|---|---|---|
| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |

Witness can testify to: _____

Distribution: Master File              Page _____ of _____                        DOC 0317 (Rev. 2/2007)
              Offender                 Printed on Recycled Paper
              Facility (2)

RESPONSE TO COMMITTED PERSON'S GRIEVANCE

## Grievance Officer's Report

Date Received: May 17, 2007      Date of Review: July 18, 2007      Grievance # (optional): 0458

Committed Person: Brian Jones      ID#: K56957

Nature of Grievance: Disciplinary Rpt: 5-2-07, Sta CC

**Facts Reviewed:** Grievant alleges that he was issued a ticket for a positive drug test. Grievant states at his first hearing on 5-9-07 and he states he did not do drugs. Grievant states he received another disciplinary report on 5-14-07 and it states he took another drug test on 5-2-07. Grievant states he did not see the Adjustment Committee for the second ticket. Grievant states he received a copy of his disciplinary report on 5-14-07 for the offense that took place on 5-2-07, 14 days after the event took place.

Counselor Response:

Upon further review from Grievance Office, finds that this office received a copy of the final results 7-18-07, for the disciplinary report written on grievant on 5-2-07. In the hearing results for the hearing written on 5-9-07, grievant states he was tested on 5-2-07, and the correction was made to the report. All procedures were followed in the drug testing, per the Facility Drug and Alcohol Testing Coordinator. Disciplinary report will be upheld, sanctions are within the range set by Adjustment Committee.

**Recommendation:** Grievance is denied.

Ami Workman
_____
Print Grievance Officer's Name             Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

## Chief Administrative Officer's Response

Date Received: 7-25-07      ☒ I concur      ☐ I do not concur      ☐ Remand

Comments:

U. McCann            7-25-07

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date: 5-16-07 | Committed Person (Please Print) BRIAN JONES | ID#: K56957 |
|---|---|---|

| Present Facility: STATEVILLE | Facility where grievance issue occurred: STATEVILLE |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☐ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ Other (specify):
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator

☒ Disciplinary Report 5, 12, 07
Date of Report

Received Grievance Office MAY 1 _ 2007

STATEVILLE. 0458
Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: I WAS ISSUED A TICKET ON 5-3-07 ABOUT A DRUG TEST THAT I ~~COMPLETED~~ WAS ACCUSED OF TAKING. THE REVIEWING OFFICER AND HEARING INVESTIGATOR SIGNED OFF ON THIS REPORT AND SENT ME TO THE ADJUSTMENT COMMITTEE. I WAS ACCUSED OF TAKING AND FAILING THIS DRUG TEST ON 5-1-07. I WENT IN FRONT OF THE ADJUSTMENT COMMITTEE FOR THIS DISCIPLINARY REPORT ON 5-9-07. I TOLD THE TRUTH I DON'T DO DRUGS, INTERNAL AFFAIRS

Relief Requested: THAT THE LAW BE ENFORCED AND THE DISCIPLINARY REPORT DISMISSED AND I'M ALLOWED OUT OF SEGREGATION A.S.AP. THANK YOU

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ Committed Person's Signature | K56957 5, 16, 07 ID# Date |
|---|---|

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___ ☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response ___/___/___ |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: ___/___/___ Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date ___/___/___ |
|---|---|

HAD A HISTORY OF HARASSING & THREATENING ME AND I NEVER EVER TOOK A DRUG TEST ON 5-1-07. LT. JOHNSON OF THE COMMITTEE SAID I SHOULD FILE A GRIEVANCE AND IF I NEVER TOOK A TEST THE REPORT WOULD BE DISMISSED SO THAT REPORT WAS DISMISSED. ON 5-14-07 I GET ANOTHER DISCIPLINARY REPORT FROM THESE ROGUE OFFICERS IN INTERNAL AFFAIRS SAYING I TOOK ANOTHER TEST 5-2-07. I DID TAKE A TEST ON THAT DAY BUT WAS NEVER EVER TOLD TO BE POSITIVE. IF I WAS ALLOWED TO DEFEND MY SELF ON THIS BOGUS CHARGE THAT THEY SAY HAPPENED 5-2-07 I COULD EXPLAIN I DON'T DO DRUGS AND HOW INTERNAL AFFAIRS BASICALLY TOLD ME THEY WERE GOING TO GET ME. BUT THIS OFFENSE THEY ACCUSE ME OF HAPPENED 5-2-07. ITS BEEN 14 DAYS AND I HAVN'T BEEN TO THE ADJUSTMENT COMMITTEE YET. A CLEAR VIOLATION OF 20 ILLINOIS ADMINISTRATIVE CODE SUB CHAPTER E - SECTION 504.80 ADJUSTMENT COMMITTEE HEARING PROCEDURE - A - WHICH STATES THE HEARING SHALL BE CONVENED BUT NOT CONCLUDED WITHIN 14 DAYS AFTER THE COMMISSION OF THE OFFENSE. I HAVE NOT BEEN TO THE COMMITTEE FOR ANY REPORT FOR AN OFFENSE THAT HAPPENED 5-2-07 ALSO - 20 ILLINOIS ADMINISTRATIVE CODE SUB CHAPTER E - SECTION - 504-20 - REVIEW OF DISCIPLINARY REPORTS - F. CLEARLY STATES IN NO EVENT I WILL REITERATE IN NO EVENT SHALL A DISCIPLINARY OR INVESTIGATIVE REPORT BE SERVED UPON AN ADULT OFFENDER MORE THAN 8 DAYS AFTER THE COMMISSION OF THE OFFENSE OR DISCOVERY UNLESS THE OFFENDER IS UNAVAILABLE OR UNABLE TO PARTICIPATE IN THE PROCEEDING. THEY CLAIM THE OFFENSE HAPPENED ON 5-2-07 THEY SIGNED AND WROTE THE REPORT 5-1-07 AND I DIDN'T GET SERVED THE REPORT UNTIL 5-14-07 12 DAYS AFTER THE ALLEGE OFFENSE. INTERNAL AFFAIRS IS BREAKING LAW THIS REPORT IS NULL & VOID LAWFULLY. PLEASE READ THESE LAWS AND SEE I'M TELLING THE TRUTH

BRIAN JONES
#K5695

(1)

MR SIMS,

I'M WRITING YOU ABOUT A BOGUS DRUG TEST THAT INTERNAL AFFAIRS PUT ON ME FOR RETALIATION. WE ALREADY SPOKE FACE TO FACE AND I KNOW ITS MY WORD AGAINST THEIRS. BUT WHAT I'M ABOUT TO TELL YOU NOW I HAVE INREFUTABLE EVIDENCE THAT I'VE BEEN IN SEG FOR THIS TICKET FOR ALMOST 90 DAYS AND I'VE NEVER BEEN TO THE ADJUSTMENT COMMITTEE. NOW THERE IS NO SECRET THAT THE QUICK SCREEN 5 CUP THAT INTERNAL AFFAIRS USE TO DRUG TEST INMATES ARE FOR PRELIMINARY USE ONLY AND ALL POSITIVE RESULTS MUST BE CONFIRMED BY OTHER METHODS WHICH OFFICERS NEVER DO. MY FAMILY HAS INVESTIGATED THESE CUPS AND SENT ME A PAMPHLET ON THE CUP FROM THE MANUFACTURES WHO ARE

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

EXPRESS DIAGNOSTICS, AND
PHARMA TECH INC. I SENT THIS
INFO TO DEPUTY DIRECTOR FEWS.
I HAVE GRIEVANCES ON THAT
ISSUE SO I WONT BOTHER YOU
WITH THAT. BUT THIS IS ILLEGAL
ACTIVITY WHAT I'M ABOUT TO
TELL YOU AND I HAVE PHYSICAL
PROOF. I GOT A TICKET MAY 3rd
SAYING I TOOK AND FAILED A
DRUG TEST MAY 1ST WHICH WAS
A BLATANT LIE. I WENT TO THE
ADJUSTMENT COMMITTEE MAY 9th.
AND TOLD THE TRUTH I NEVER TOOK
A DRUG TEST MAY 1ST PERIOD.
SO THAT WAS THE END OF THAT.
I RECEIVE ANOTHER TICKET
MAY 14TH SAYING I TOOK AND
FAILED A TEST MAY 2nd. THEY
WROTE THIS TICKET MAY 11th.
SO FINE I WAS PREPARED WITH
MY DEFENSE WHICH WAS THIS.
I DON'T DO DRUGS PERIOD. I.A.
THREATENED ME A WEEK BEFORE
THIS TEST, I RECEIVE THE TICKET
FOR THIS MAY 2nd TEST ON

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

MAY 11TH WHICH IS ILLEGAL, THE
CUPS ARE NOT CONCLUSIVE
CUPS. AND MY TICKET SHOULD BE
THROWN OUT, THATS WHAT MY
DEFENSE IS. ITS 7-22-07 AND
I STILL HAVN'T BEEN TO THE
ADJUSTMENT COMMITTEE.
SO IVE BEEN WRITING GRIEVANCES
AND LETTERS TO <u>COUNSELOR</u>
<u>BUTKIEWICZ</u> AND <u>GRIEVANCE</u>
<u>OFFICER</u> <u>AMI</u> <u>WORKMAN</u>.
SO ~~COUNSELOR~~ TOLD ME THAT
THE COMMITTEE TOLD HIM I
WENT TO THE HEARING ON THE
CORRECT TICKET 5-15-07
THIS WAS ~~BLACKED OUT~~ JULY 10TH.
SO I SAID THATS A <u>LIE</u> I NEVER
GOT A SUMMARY BECAUSE I
NEVER HAD A HEARING I'M
JUST SITTING IN SEG ILLEGALLY.
SO I WROTE THE GRIEVANCE
OFFICER ABOUT THIS. WHICH SHE
COPIED THE LETTER AND I
HAVE HER <u>HAND WRITING</u>
RESPONDING TO THE LETTER
I TOLD THEM IN THE LETTER

RECEIVED

AUG - 1 2007

OFFICE OF
INMATE ISSUES

I TALKED TO INVESTIGATOR SIMS
AFTER 5-15-07 AND HE KNOWS
I HAVN'T BEEN TO THE COMMITTEE
SO IF YOU GUYS LIEFT WELL
BE EXPOSED. SO A FEW DAYS
LATER THE COUNSELOR CAME
TO MY DOOR AND SAID I TALKED
TO THE GRIEVANCE OFFICER WE
BOTH KNOW YOU NEVER BEEN
TO THE ADJUSTMENT COMMITTEE
FOR THE CORRECT TICKET THEY
SCREWED UP AND YOUR TICKET
SHOULD BE EX PUNGED BUT
GRIEVANCE OFFICER
WORKMAN WAS TOLD TO.
NOT GRANT YOUR GRIEVANCE
I SAID THEY CAN'T TELL HER
THAT ALL INMATES HAVE
A RIGHT TO GO IN FRONT
OF THE ADJUSTMENT COMMITTEE
FOR THE CORRECT TICKET TO
DEFEND THERESELVES. I SAID
THATS IN THE RULE BOOK UNDER
THE 20 ILLINOIS ADMINISTRATIVE
CODE SUB CHAPTER SOY. THIS
IS ILLEGAL. THEN THE

RECEIVED
AUG - 1 2007
OFFICE OF
INMATE ISSUES

COUNSELOR SAID I KNOW YOU'RE 100% RIGHT IF I WAS YOU I WOULD WRITE SPRINGFEILD AND THATS WHAT I'M DOING. SO ON 7-26-07 I GET A SUMMARY THAT THE WARDEN SIGNED 7-18-07 SAYING I WENT TO THE COMMITTEE 5-9-07 AND I GOT A CORRECT TICKET FOR A TEST ON 5-2-07 ON 5-14-07. BUT WHEN I WENT 5-9-07 I'M GUILTY OF THE TICKET I RECEIVED 5-14-07. DOES IT MAKE SINCE OF COURSE IT DOESN'T BUT THIS IS WHAT IS HAPPENING. WHEN I GOT THE TICKET 5-14-07 ALL THEY HAD TO DO IS CALL ME TO DEFEND MYSELF IN FRONT OF THE COMMITTEE. WHICH THEY NEVER DID. I HAVE PROOF THAT THEY TRIED TO LIE AND SAY I HEARD THE TICKET 5-15-07 BUT CHANGED IT WHEN I MENTIONED YOUR

RECEIVED
AUG - 1 2007
OFFICE OF INMATE ISSUES

NAME. I HAVE PROOF I RECEIVED THE TICKET 5-14-07 AND NEVER BEEN TO THE COMMITTEE AND I HAVE PROOF BY I.D.O.C STAFF THAT THEY WERE TOLD By OTHER I.D.O.C. STAFF IN A HIGHER POSITION TO NOT GRANT MY GRIEVANCE EVEN THOUGH THE RULES AND FILINGS LAW CLEARLY STATES INMATES MUST DEFEND THEIR SELVES WITH THE CORRECT TICKET. THIS IS NOT MY WORD AGAINST THEIRS I HAVE PHYSICAL EVIDENCE AND I.D.O.C. STAFF WHO CAN TELL YOU WHO EXACTLY TOLD THEM TO BREAK THE LAW. THEY GAVE ME 6 MONTHS SEG., 6 MONTHS NO-CONTACT VISITS & 6 MONTHS C-GRADE. FOR NOT ONLY A FABRICATED TICKET BUT A TICKET I NEVER HAD A CHANCE TO DEFEND MYSELF OF. PLEASE BE FAIR. YOU TOLD ME YOU WERE FAIR AND WRITE YOU WHEN ILLEGAL ACTIVITY HAPPENS. THANK YOU!

I IMPLORE YOU TO INVESTIGATE AND EXPUNGE THIS FROM MY RECORD AND LET ME OUT OF SEG.

PLEASE LET ME KNOW YOU RECEIVED THIS. B. ___ K56957

from one facility to another while pending a hearing, the individual shall be provided with an opportunity to present a defense at any subsequent disciplinary hearing held at the receiving facility that is comparable to that which would have been afforded, in accordance with this Subpart, at the sending facility.

b)    In determining the appropriate sanctions, the Adjustment Committee or Program Unit, the Chief Administrative Officer, and the Director may consider, among other matters, mitigating or aggravating factors such as:

1)    The offender's mental state at the time of committing the offense;

2)    The extent and degree of participation in the commission of the offense;

3)    The amount or nature of stolen property, contraband, or injury; and

4)    The offender's prior disciplinary record.

c)    Corporal punishment, disciplinary restrictions on diet, medical or sanitary facilities, clothing, bedding, mail, or access to legal materials and reductions in the frequency of use of toilets, washbowls, and showers shall be prohibited.

d)    Disciplinary restrictions on visitation, work, education, or program assignments and use of the library shall be related as closely as practicable to the abuse of such privileges. This subsection shall not apply to segregation or isolation of offenders for purposes of institutional control.

e)    Offenders are presumed to be responsible for any contraband or other property prohibited by this Part that is located on their person, within their cell or within areas of their housing, work, educational, or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to, the door track, window ledge, ventilation unit, plumbing, and the offender's desk, cabinet, shelving, storage area, bed, and bedding materials in his or her housing assignment; and desk, cubicle, work station, and locker in his or her work, educational, or vocational assignment. If the offender produces evidence that convinces the Adjustment Committee or Program Unit that he or she did not commit the offense, the offender shall be found not guilty.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

## Section 504.30  Preparation of Disciplinary Reports

a)    Every employee has the duty to observe the conduct of offenders.

b)    If an employee observes an adult offender committing an offense, discovers evidence of its commission, or receives information from a reliable witness of

**20 ILLINOIS ADMINISTRATIVE CODE          CH. I. SEC.504**
**SUBCHAPTER e**

such conduct, the employee shall promptly prepare a disciplinary report. However, if the infraction is one of those listed in the 400 series in Table A and the employee determines a disciplinary report is not necessary to resolve the situation, the employee may orally reprimand the offender.

c)   If an employee observes a juvenile offender committing an offense, discovers evidence of its commission, or receives information from a reliable witness of such conduct, the employee shall promptly prepare a disciplinary report provided the conduct is such that it may result in disciplinary action that suspends privileges, involves the imposition of disciplinary confinement, delays referral to the Prisoner Review Board, or causes a change in work, education, or other program assignments of more than 7 days duration. When the rule infraction is minor, every effort should be made to take corrective action that is adapted to individual circumstances, administered immediately and consistently, and is understood by the offender through appropriate counseling efforts.

d)   The disciplinary report must be fully completed. The reporting employee shall provide the following information to the extent known or available.

　　1)   The name and register number of the offender.

　　2)   The place, time, and date of the offense.

　　3)   The offense that the offender is alleged to have committed.

　　4)   A written statement of the conduct observed.

　　5)   The names of offenders, employees, and visitors who were witnesses. The identity of witnesses may be withheld for reasons of security provided a statement to that effect and the information the confidential source provided are included on the disciplinary report to the extent the information can be included without jeopardizing security.

　　6)   The signature of the reporting employee and the date and time the report is completed.

e)   If an offender is suspected of committing a disciplinary offense, an investigative disciplinary report, hereinafter referred to as an investigative report, may be issued that reasonably informs the offender of the subject of the investigation to the extent that safety and security allow.

f)   Service of a disciplinary report upon the offender shall commence the disciplinary proceeding. In no event shall a disciplinary report or investigative report be served upon an adult offender more than 8 days; or on a juvenile offender more.

than 6 days, after the commission of an offense or the discovery thereof unless the offender is unavailable or unable to participate in the proceeding.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003))

## Section 504.40  Temporary Confinement

a) The shift supervisor shall determine whether or not it is necessary to place the offender in investigative status or in temporary confinement status pending a disciplinary hearing or a determination whether or not to issue a disciplinary or investigative report in accordance with Section 504.30. The Chief Administrative Officer shall also have the authority to release the offender from temporary confinement. The decision to place an offender in temporary confinement may be based, among other matters, on:

   1) The aggressiveness of the offender;

   2) The threat posed to the safety and security of the facility or any p...son;

   3) The need to restrict the offender's access to general population to protect the individual from injury or to conduct the investigation; or

   4) The seriousness of the offense.

b) A juvenile offender shall not be placed in temporary confinement status pending a disciplinary hearing for more than 4 days unless the individual is in investigative status.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

## Section 504.50  Review of Disciplinary Reports

a) The Chief Administrative Officer of each facility shall designate one or more Reviewing Officers.

b) The Reviewing Officer shall review the decision to place an offender in temporary confinement within 3 days after such placement, whenever possible, and may order release from or placement in temporary confinement. Among other matters, the factors listed in Section 504.40(a) may be considered. If a disciplinary or investigative report has not been written within 3 days after placement in temporary confinement, the Reviewing Officer shall inform the Chief Administrative Officer.

c) An offender who receives an investigative report shall be interviewed by the Reviewing Officer in order to permit the offender an opportunity to present his or her views regarding placement in investigative status. The interview shall be

conducted within 14 days after initial placement of an adult offender in investigative status or within 3 days after initial placement of a juvenile offender in investigative status, whenever possible.

1) The Reviewing Officer shall recommend whether to continue placement of the offender in investigative status. Among other matters, factors listed in Section 504.40(a) may be considered. The Chief Administrative Officer shall make the final determination.

2) The offender shall be informed of the decision and the decision shall be documented in writing.

3) The offender may be detained in investigative status for up to 30 days for adults and up to 5 days for juveniles.

4) If the investigation does not indicate that the offender may be guilty of any disciplinary offense, placement in investigative status shall be terminated and the report shall be expunged from the offender's records. A copy shall be maintained in an expungement file. This decision shall be made by the Chief Administrative Officer and shall be documented in writing.

5) If, as a result of the investigation, it is necessary to amend or modify the original charges, the offender shall be issued a revised disciplinary report.

6) Upon completion of the investigation, the offender shall appear before the Adjustment Committee for a hearing on the disciplinary report unless the report has been expunged.

7) In the event that an investigation cannot be completed within 30 days for adults or 5 days for juveniles due to an institutional emergency, the Chief Administrative Officer may personally authorize, in writing, an extension of up to 30 days placement in confinement for adults and up to 5 days placement in confinement for juveniles pending investigation. As used in this Section, an institutional emergency includes riots, strikes, lockdowns, and natural disasters.

8) The Director may personally authorize, in writing, additional extensions of up to 30 days each for adults if an institutional emergency prevents completion of the investigation within 60 days. The offender shall be informed of the decision in writing.

d) The Reviewing Officer shall review each disciplinary report and determine whether:

1) The reported facts justify a disciplinary hearing. If not, the report shall be expunged from the offender's records. A copy shall be maintained in an expungement file.

2) The disciplinary report has been completed properly. If not, the Reviewing Officer shall make the necessary corrections or direct the reporting employee to make the corrections. The offender shall be provided with a copy of the corrected report. In the event the corrected report contains new charges, the offender shall be provided a copy of the corrected report at least 24 hours prior to the hearing, unless the offender waives this notice in writing.

3) The offense is major or minor in nature. Major offenses shall be assigned to the Adjustment Committee for a hearing and minor offenses shall be assigned to the Program Unit for a hearing.

   A) Aiding and abetting, soliciting, attempting to commit, conspiring to commit, or committing any offense listed in the 100, 200, or 500 series of Table A or Table B shall be considered a major offense.

   B) Those offenses listed in the 300 or 400 series or the aiding and abetting, soliciting, attempting to commit, or conspiring to commit any of these offenses shall be designated as major or minor based on the seriousness of the offense and factors enumerated in Section 504.20(b).

c) In adult correctional centers, the Reviewing Officer shall forward copies of all major disciplinary reports to the Hearing Investigator.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

## Section 504.60  Investigation of Major Disciplinary Reports

This Section only applies to adult correctional centers. This does not preclude use of Hearing Investigators at other facilities.

a) The Chief Administrative Officer shall appoint one or more Hearing Investigators who shall review all major disciplinary reports.

b) The Hearing Investigator may conduct an investigation into the charges as determined to be appropriate. This determination may be based, among other matters, upon the severity of the offense, the complexity of the charges, or the offender's admission of guilt. The investigation may include an investigation of additional charges.

c)    The Hearing Investigator may correct or direct the reporting employee to correct any errors in the disciplinary report. The offender shall be provided with a copy of the corrected report. In the event the corrected report contains new charges, the offender shall be provided a copy of the corrected report at least 24 hours prior to the hearing unless the offender waives this notice.

d)    The Hearing Investigator may interview any person who may have information that relates to the alleged violation and may inspect any physical evidence.

e)    The Hearing Investigator shall determine whether or not to submit a report to the Adjustment Committee, based upon the results of the investigation. However, if the investigation reveals evidence of a convincing nature that the offender did not commit the offense, that evidence must be reported to the Committee.

f)    Any report may be submitted in writing or presented orally, as determined by the Hearing Investigator.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

**Section 504.70  Adjustment Committee and Program Unit Composition**

a)    The Chief Administrative Officer shall appoint the Adjustment Committee, which shall be composed of at least 2 members.

    1)    For adult offenders, the Adjustment Committee shall include:

        A)    To the extent possible, a person representing the counseling staff; and

        B)    At least one minority staff member.

    2)    The Chief Administrative Officer shall designate a chairperson.

b)    The Program Unit shall be composed of a group of employees appointed by the Chief Administrative Officer who shall serve as Hearing Officers. For adult offenders, at least one member of the Unit shall be a minority staff member.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

**Section 504.80  Adjustment Committee Hearing Procedures**

a)    The Adjustment Committee hearing shall be convened but need not be concluded within 14 days after the commission of the offense by an adult offender or within 7 days after the commission of the offense by a juvenile offender or its discovery, whenever possible, unless the offender has received a continuance or is unable or unavailable for any reason to participate in the hearing. For purposes of this

Section, when an investigation has taken place, an offense is considered to be discovered upon the conclusion of the investigation. Inability to participate includes the absence of the offender from the facility for any reason or certification by health care staff that the offender is unable to appear.

b) The offender shall receive written notice of the facts and charges being presented against him or her no less than 24 hours prior to the Adjustment Committee hearing. The offender may waive the 24-hour advance notice. The waiver shall be in writing.

c) The offender shall be informed before or at the hearing of information that would tend to show that the offender was not guilty. If the information is provided to him or her at the hearing, the offender shall, upon request, be given a continuance.

d) Any person who initiated the allegations that serve as the basis for the disciplinary report, or who conducted an investigation into those allegations, or who witnessed the incident, or who is otherwise not impartial shall not serve on the Adjustment Committee hearing that disciplinary report. An offender who objects to a member of the Committee based on a lack of impartiality must raise the matter at the beginning of the hearing. The Committee shall document the basis of the objection and the decision in the Adjustment Committee summary.

e) An offender may, upon written request and for good cause shown, be granted additional time to prepare his or her defense. If at the time of the hearing the Committee determines that the offender was unable to prepare a defense, because of a language barrier, the Committee shall automatically grant a request for a continuance for language assistance. The committee shall then make the necessary arrangements for language assistance. Inability to prepare a defense due to a language barrier includes, but is not limited to, a request for witnesses.

f) Any offender charged with a violation of any rule shall have the right to appear before and address the Committee. Any refusal to appear shall be documented and provided to the Committee. However, failure to appear before or address the Committee may be adversely construed against the individual by the Adjustment Committee.

1) The offender may make any relevant statement or produce any relevant documents in his or her defense.

2) Prior to the hearing, the offender may request that witnesses be interviewed. The request shall be in writing on the space provided in the disciplinary report and shall include an explanation of what the witnesses would state. If the offender fails to make the request in a timely manner before the hearing, the individual may be granted a continuance for good cause shown.

g)  The Committee shall consider all material presented that is relevant to the issue of whether or not the offender committed the offense.

h)  The Adjustment Committee shall consider any statements of witnesses with relevant knowledge of the incident who are reasonably available.

   1)  The Committee or its Hearing Investigator may interview witnesses and prepare or review summaries of their testimony prior to or at or subsequent to the hearing.

   2)  The offender does not have the right to confront or cross-examine any witnesses but may submit questions for witnesses to the Committee prior to the hearing. These questions shall be asked by the Committee or its Hearing Investigator unless found to be cumulative, irrelevant, or a threat to the safety of individuals or the security of the facility.

   3)  A means shall be provided in each living unit for offenders to submit witness request slips. The Committee may disapprove witness requests that are not received prior to the hearing.

   4)  Requests by offenders for witnesses may be denied if their testimony would be, among other matters, irrelevant or cumulative or would jeopardize the safety or disrupt the security of the facility. If any witness request is denied, a written reason shall be provided.

   5)  At least one person who serves as an Adjustment Committee member shall hear the in-person testimony of the offender's witnesses where the offender makes a timely request for the witnesses or is granted a continuance to request witness testimony. In-person testimony of the offender's witnesses shall be defined as face-to-face contact or telephonic contact by the Adjustment Committee.

   6)  If the Adjustment Committee makes a written determination that the in-person testimony by the witness requested by the offender would undermine authority or would present potential disruption of the operations of the facility or a threat to the safety of any person or institutional safety or correctional goals, the Adjustment Committee may elect to accept the testimony through other legally permissible means, including, but not limited to, a sworn written summary of an interview of the witness or a sworn statement.

   7)  A sworn written statement or sworn written summary of a witness' testimony is a reasonable alternative to in-person testimony if the witness' testimony will be accepted as credible and it involves verification of

alleged facts, including but not limited to a witness who will testify to the authenticity of contents of a record or document, cell location, work assignment, writ status, staff work schedule, or identification.

8)    When testimony is presented to the Adjustment Committee in the form of a written summary or statement, a copy of the written summary or statement shall be given to the accused offender unless the Adjustment Committee finds that disclosure presents a threat to the safety of any person.

i)    The offender shall not have the right to either retained or appointed counsel. The offender may request the assistance of a staff member in the preparation and presentation of his or her defense if he or she is illiterate or does not speak English or when other circumstances exist that preclude the individual from adequately preparing his or her defense.

j)    The Adjustment Committee shall decide whether or not the offender committed the offense based upon all relevant information and evidence.

1)    The Committee must be reasonably satisfied there is some evidence that the offender committed the offense for the individual to be found guilty.

2)    Polygraph results may be considered but may not be the sole basis for finding the offender guilty of the offense.

k)    The Adjustment Committee shall take one of the following actions, based upon the evidence admitted:

1)    Find that the offender did not commit the offense. In that case, the Committee shall order that the disciplinary report be dismissed and expunged from the offender's record. A copy shall be maintained in an expungement file.

2)    Find that further investigation is necessary to determine if the offender did or did not commit the offense and place the offender in investigative status.

3)    Find that additional time is needed to obtain information relative to the charge. The hearing may be continued for a reasonable time. However, unless the offender is placed in investigative status, the individual may not be confined for more than 14 days for adult offenders or 7 days for juvenile offenders from the date of placement in temporary confinement.

4)      Find that the offender did commit the offense or a lesser offense for which
        the elements were included in the original charge.  The Committee may
        recommend one or more of the following disciplinary actions:

   A)      Reprimand the offender.

   B)      Suspend or restrict one or more privileges of the offender for a
           specific period of time.

   C)      Reduce the offender's grade or level.

   D)      Change the offender's program.

   E)      Change the offender's housing assignment or transfer the
           individual to another correctional facility.

   F)      Revoke the offender's statutory good time or good conduct credits.

   G)      Increase the offender's security classification.

   H)      Place the offender in segregation or confinement.  A juvenile
           offender may not be confined for more than 7 consecutive days nor
           more than 15 days within a 30 day period except in cases of
           violence or attempted violence in accordance with Section
           504.730.  Credit shall be given for any period of pre-hearing and
           investigative status confinement.

   I)      Require the offender to make restitution.

   J)      Revoke the offender from a transition center.  If revocation is
           recommended, the Committee may also recommend reduction in
           grade and placement in segregation.

   K)      Require forfeiture of items of contraband used in the offense or
           possessed in violation of this Part.

   L)      Delay referral of a juvenile offender to the Prisoner Review Board
           for recommended parole.

5)      This Part shall in no way be construed to restrict or limit the Department's
        ability to administratively change an offender's job, educational, program,
        or housing assignment, to restrict privileges, or to transfer the offender to
        another facility.



l)   A written record shall be prepared and signed by all members of the Committee that contains:

1)   A summary of oral and written statements and other evidence presented.

   A)   The Committee may consider information from confidential sources if:

      i)   It finds that his or her identity must be withheld for reasons of security; and

      ii)   The information is reliable.

   B)   Reliability may be established by one of the following:

      i)   The investigating officer has indicated, in writing and by his or her appearance before the Adjustment Committee, the truth of his or her report containing confidential information;

      ii)   Corroborating testimony such as statements from other sources or polygraph results; or

      iii)   A statement by a member of the Adjustment Committee or an oral or written statement to the Adjustment Committee by supervisory or administrative staff that the individual has firsthand knowledge of the sources of information and considers them reliable on the basis of their past record of reliability.

   C)   If the identity of a source is being withheld for reasons of security, a statement to that effect and a statement that the Committee finds the information reliable must be included. A summary of the information provided and the basis for the finding of reliability shall be documented, but need not be included in the summary based on safety and security concerns.

2)   If the Committee members find that the offender committed the offense, a statement as to their reasons for the finding. If exonerating evidence is presented and disregarded, the Committee must state the basis for disregarding the evidence.

3)   The disposition of the charges, the disciplinary action recommended, and the reasons for recommending the disciplinary action.

m)    If the safety or security of the facility or any person is jeopardized by certain references in the written record, they may be deleted but the fact that omissions have been made shall be noted on the summary, along with a finding that material is being deleted based on safety or security concerns.

n)    If the offender is found guilty, the individual shall be informed of the opportunity to appeal through the grievance procedures in 20 Ill. Adm. Code 504.Subpart F.

o)    A copy of the disciplinary report and Adjustment Committee summary shall be forwarded to the Chief Administrative Officer for review and approval and a copy shall be filed in the offender's record . The offender shall be given a copy of the Adjustment Committee summary.

p)    The Chief Administrative Officer shall review all Adjustment Committee dispositions. The Director shall review all Adjustment Committee dispositions in which it is recommended that the offender lose statutory good time or good conduct credits. The Deputy Director of the Juvenile Division shall review any Adjustment Committee disposition of a juvenile offender when the Committee has recommended a delay in referral of the offender to the Prisoner Review Board for more than 30 days.

    1)    The Director, Deputy Director, or the Chief Administrative Officer may take the following actions:

        A)    Confirm the recommendation in whole or in part.

        B)    Order additional or new proceedings.

        C)    Suspend or overturn the recommendation.

        D)    Offer the offender a work assignment which, if accepted and satisfactorily completed, will result in reduction of original disciplinary sanctions.

    2)    The Director, Deputy Director, or the Chief Administrative Officer shall not increase the sanctions recommended by the Adjustment Committee, but he or she may reduce them. The offender shall be sent a copy of any modification to the Adjustment Committee recommendations.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)